CAVALIER TELEPHONE,
LLC, Plaintiff,

v.

VERIZON VIRGINIA INC., Defendant.

No. Civ.A. 3:01CV736.

United States District Court,
E.D. Virginia,
Richmond Division.

March 27, 2002.

Donald Francis Lynch, III, Alan Mark Shoer, Cavalier Telephone, Stephen Thomas Perkins, Cavalier Telephone, LLC, Richmond, VA, for Plaintiff.

Anne Marie Grimes Whittemore, McGuireWoods, LLP, Robert Michael Tyler, McGuireWoods, LLP, Richard Cullen, McGuireWoods, LLP, Richmond, VA, Andrew Gerald McBride, Wiley, Rein & Fielding, Mark C. Hansen, Eugene Morris Paige, Aaron Martin Panner, Kellogg, Hu-

ber, Hansen, Todd & Evans, P.L.L.C., Richard G. Taranto, Farr & Taranto, Washington, DC, John Thorne, Arlington, VA, for Defendant.

Adam Augustine Carter, Washington, DC, Diana D. Parker, Law Offices of Diana D. Parker, New York City, Steven G. Sanders, Arseneault & Fassett, Chatham, NJ, for Movant.

James Crawford Roberts, Troutman Sanders, LLP, Richmond, VA, Dabney Jefferson Carr, IV, Troutman Sanders, LLP, Richmond, VA, David L. Lawson, Sidley Austin Brown & Wood, LLP, Washington, DC, Mark C. Rosenblum, AT & T Corp., Basking Ridge, NJ, Kimberly Anne Newman, Hunton & Williams, Washington, DC, Michael J. Lockerby, Hunton & Williams, Richmond, VA, N. Frank Wiggins, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, Lawrence E. Sarjeant, United States Telecom Association, Washington, DC, James R. Young, Hunton & Williams, McLean, VA, for Amicus.

### MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on Verizon Virginia's Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Motion is granted in full.

### I.

Cavalier Telephone ("Cavalier") competes with Verizon Virginia ("Verizon") in the basic telecommunications services market. Under the Telecommunications Act of 1996 ("the 1996 Act"), 47 U.S.C. § 151 et seq., incumbent local exchange carriers ("ILECs") like Verizon are required to provide certain facilities to competing local carriers, such as Cavalier, at cost-based rates. The 1996 Act contemplated the entry of other telecommunications companies like Cavalier into local markets, fostering competition in an area that had once been controlled by a regulated monopoly.

The 1996 Act imposes certain duties on ILECs. Among these obligations are a duty to provide interconnection, a duty to allow unbundled access to network elements, and a duty to provide collocation. Among the facilities that Verizon must supply to Cavalier are "last-mile" facilities or loops, which connect customers' premises to Verizon's central offices. Verizon's duties to Cavalier under the 1996 Act are contained in an Interconnection Agreement that the two parties executed in January 1999 and the State Corporation Commission ("SCC") approved in June 1999.

Cavalier filed suit against Verizon on November 1, 2001, enumerating 10 separate causes of action in its Complaint. These causes of action include several alleged violations of federal law, making federal jurisdiction proper. Specifically, Cavalier raises the following claims:

First Cause of Action: Monopolization;

Second Cause of Action: Attempted Monopolization;

Third Cause of Action: Violation of the Lanham Act;

Fourth Cause of Action: Violation of the Communications Act of 1934;

Fifth Cause of Action: Violation of the Merger Order;

Sixth Cause of Action: Violation of the Uniform Trade Secrets Act;

Seventh Cause of Action: Tortious Interference with Contract;

Eighth Cause of Action: Tortious Interference with Prospective Economic Advantage;

Ninth Cause of Action: Intentional or Negligent Misrepresentation; and

Tenth Cause of Action: Breach of Contract in Regard to the Interconnection Agreement.

To support these causes of action, Cavalier alleges numerous factual incidents of anti-

competitive behavior on the part of Verizon. These include claims that Verizon took steps to delay Cavalier's entry into the market, that Verizon mis-routed Cavalier's calls, that Verizon supplied Cavalier with an inferior Web interface for use in ordering loops, that Verizon refused to supply loops on integrated digital loop carriers, that Verizon manipulated charges, that Verizon attempted to delay Cavalier's efforts to build fiber-optic networks, and that Verizon intentionally made the billing process for loops costly for its competitors.

Cavalier requested a temporary restraining order and a preliminary injunction to prevent Verizon from taking certain actions, but the Court, in a November 21, 2001 Order, denied Cavalier's motion. Verizon then brought this Motion to Dismiss.

## II.

Verizon attacks each of Cavalier's federal law claims, asking the Court to dismiss each one, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. To succeed on a Motion to Dismiss under Rule 12(b)(6), Verizon must show that, when all factual allegations in the plaintiff's complaint are treated as true, the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must confine itself to the allegations in the pleadings in making this determination. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The factual allegations in the complaint are accepted as true and the plaintiff is given the benefit of any reasonable inference that can be drawn from the allegations. *Mylan Labs. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

If the federal law claims are dismissed, Verizon argues, no independent basis exists for federal jurisdiction over the state law claims. Verizon then asks the Court to dismiss the state law claims for lack of jurisdiction. Accordingly, the analysis of Verizon's Motion to Dismiss must begin with a count-by-count examination of Cavalier's claims under federal law.

### A. Count One: Monopolization

██ Claims that ILECs, such as Verizon, are not providing adequate access to facilities do not necessarily state a claim under § 2 of the Sherman Act, 15 U.S.C. § 2. It is equally true that the 1996 Act is not at odds with federal antitrust laws, but rather imposes more specific duties than those contained in federal antitrust laws.[1]

---

**1.** The relationship between federal antitrust law and the 1996 Act is made clear by the very language of the 1996 Act: Section 601(c)(1) states that the Act "shall not be construed to modify, impair, or supersede Federal, State or local law unless expressly so provided." Telecommunications Act of 1996, § 601, 110 Stat. 56 (1996). Furthermore, Section 601(b)(1) of the 1996 Act states that nothing in the Act "shall be construed to modify, impair, or supersede the applicability of any of the antitrust laws." *Id.*, § 601(b)(1).

Since antitrust laws represent a "fundamental national economic policy," industry regulations do not generally render antitrust laws inapplicable to the industry. *Square D. Co. v. Niagara Frontier Tariff Bureau Inc.*, 476 U.S. 409, 421, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986). When determining whether the repeal of antitrust laws can be inferred, the Fourth Circuit employs a two-part analysis: (1) Is there an "affirmative showing of a legislative intent to repeal," and (2) is there a showing that federal antitrust laws and the regulatory scheme in question cannot be reconciled? *North Carolina ex rel. Edmisten v. P.I.A. Asheville, Inc.*, 740 F.2d 274, 280 (4th Cir.1984) (citing *Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City*, 628 F.2d 1050 (8th Cir.1980), reversed, 452 U.S. 378, 382–83, 101 S.Ct. 2415, 69 L.Ed.2d 89 (1981)).

No such inference can be drawn from the 1996 Act. The language of the 1996 Act makes

Given these two certainties, this Court is left to discern whether the factual allegations contained in Cavalier's Complaint state an actual antitrust claim under the Sherman Act or whether they merely represent violations of the 1996 Act dressed up in antitrust garb. A careful review of the Complaint reveals they are the latter.

 Even a monopolist does not have a responsibility to help its competitors. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 929 (4th Cir.1990) (citing *Olympia Equip. Leasing v. Western Union Telegraph*, 797 F.2d 370, 375 (7th Cir.1986)). In *Goldwasser v. Ameritech Corp.*, 222 F.3d 390 (7th Cir.2000), the Seventh Circuit seized on this principle and held that the 1996 Act went far beyond the monopolization provision of the Sherman Act, 15 U.S.C. § 2, by imposing affirmative duties on ILECs. *Goldwasser*, 222 F.3d at 400–1. Indeed, it is clear that the 1996 Act creates "more specific and far-reaching obligations" than those embodied in § 2 of the Sherman Act. *Id.* at 401.[2] Under the 1996 Act, Congress tasked ILECs with the duty to provide interconnection, unbundled access to network elements, and collocation to their own competitors. 47 U.S.C. §§ 251(c)(2), 251(c)(3), 251(c)(6). Such specific obligations extend far beyond the general admonitions against monopolization and anti-competitive behavior expressed by federal antitrust law.

As a result, Cavalier cannot state a claim under § 2 of the Sherman Act if it alleges violations of affirmative duties created by the 1996 Act. In fact, the *Goldwasser* court went further and dismissed a generically stated antitrust claim because it was "inextricably linked" to the claims under the 1996 Act. *Id.* In *Goldwasser*, the allegations were actually grounded in the 1996 Act, with specific sections of the Act referenced. *Goldwasser*, 222 F.3d at 394–95. While Cavalier avoids such tell-tale references in its Complaint, it is nevertheless clear that Cavalier alleges nothing more than violations of duties imposed on Verizon by the 1996 Act. That Cavalier's Complaint did not characterize its allegations as violations of the 1996 Act is beside the point. Such a shallow interpretation of the relationship between the 1996 Act and antitrust law would relegate the matter to a mindless word game played out at the pleading stage: Parties that omit references to the 1996 Act from their complaint could potentially proceed with an antitrust claim and those that referenced the 1996 Act in their complaint would virtually always see their antitrust claims dismissed. The correct test is whether the factual allegations contained in the Complaint amount to antitrust violations.

 In its Complaint, Cavalier alleges a series of actions that it believes amount to monopolization. It divides these claims into seven basic categories: (1) Interconnection Obstacles; (2) Collocation Obstacles; (3) Pre–Order and Ordering Issues; (4) Facilities Assignment; (5) Provision of Last–Mile Facilities; (6) Network–Related Problems; and (7) Billing. Cavalier makes certain factual allegations in regard to each of these categories and characterizes Verizon's actions not as "affirmative"

---

it clear that no legislative intent to repeal federal antitrust laws existed. Furthermore, while the 1996 Act imposes more specific duties on ILECs than those found in antitrust laws, those duties "do not conflict with the antitrust laws. . . ." *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 401 (7th Cir.2000). Given that the intent the 1996 Act was to foster more competition in the telecommunications market, the purpose underlying the 1996 Act can be reconciled with federal antitrust laws.

**2.** Ultimately, in *Goldwasser*, the Seventh Circuit upheld the district court's dismissal of a monopolization claim under § 2 of the Sherman Act on grounds that the claim did nothing more than state alleged violations of the 1996 Act. *Goldwasser*, 222 F.3d at 402.

violations of the 1996 Act, but rather as violations of "negative duties" imposed by federal antitrust law. *See generally USM Corp. v. SPS Technologies, Inc.,* 694 F.2d 505, 513 (7th Cir.1982) (indicating that antitrust laws impose negative duties). Regardless of how these factual allegations are characterized, it is clear that they are violations of duties imposed by the 1996 Act. A closer analysis of each of these seven categories underscores this point.

Cavalier first alleges anti-competitive behavior in regard to the provision of interconnection services. Complaint, ¶¶ 49–55. It contends that Verizon delayed its entry into the market by refusing to agree to interconnection until Cavalier presented a certificate of public convenience and necessity. Complaint, ¶¶ 49–51. Even after interconnection service was provided, Cavalier asserts that Verizon did not provide sufficient trunks—communications lines that link switching stations—to carry Cavalier's telephone traffic. Complaint, ¶¶ 52–53. The result was a blockage of calls to Cavalier's customers in the Tidewater region. Complaint, ¶ 54. Lastly, Cavalier claims that Verizon misrouted calls and caused a complete outage in Northern Virginia. Complaint, ¶ 55.

Cavalier never mentions the 1996 Act in making these allegations. However, the 1996 Act clearly dictates that Verizon must provide interconnection and must do so in a way that is "at least equal in quality to that provided by the local exchange carrier to itself...." 47 U.S.C. §§ 251(a)(1), 251(c)(2)(C). Cavalier does not contend that Verizon failed to provide interconnection services, but rather has presented a series of allegations that go to the quality and timeliness of the interconnection services Verizon has provided and is providing to Cavalier. The 1996 Act squarely addresses this issue, leaving no question that Cavalier, in making its argument on this point, is doing no more than mis-characterizing an alleged violation of the 1996 Act as a monopolization claim.

Collocation is the next issue raised in Cavalier's Complaint. Cavalier asserts that Verizon has delayed making space available in Verizon's central office for collocation, that Verizon has overcharged for the space, that Verizon has made Cavalier wait lengthy periods of time for such space to become available, and that Verizon has imposed "non-competitive prices" and "burdensome rules" for collocation. Complaint, ¶¶ 56–65.

The Complaint avoids mention of the duties imposed by the 1996 Act in regard to collocation. Nevertheless, the 1996 Act clearly imposes such duties upon Verizon. According to the 1996 Act, Verizon must provide collocation under "reasonable and nondiscriminatory" rates and conditions. 47 U.S.C. § 251(c)(6). In its Complaint, Cavalier is simply taking issue with the reasonableness of the terms and rates that Verizon is setting for collocation. As such, the issue falls within the 1996 Act and not, as Cavalier contends, under the Sherman Act.

■ Cavalier also considers Verizon's handling of pre-ordering and ordering of services to be anti-competitive. Its Complaint indicates that Verizon has made the process of ordering last-mile facilities "lengthy, complex, and expensive," that Verizon has provided inferior databases and web-based interfaces for ordering loops or last-mile facilities, and that Verizon personnel have contacted Cavalier customers in an attempt to dissuade these customers from purchasing or continuing to purchase service from Cavalier. Complaint, ¶¶ 66–82. Without mentioning the 1996 Act, Cavalier has again raised a duty or obligation created and imposed by the 1996 Act. According to the 1996 Act, Verizon must provide access to "network elements on an unbundled basis" on reason-

able and nondiscriminatory terms and conditions. 47 U.S.C. § 251(c)(3).[3]

If Verizon is, in fact, providing access to these facilities through error-laden or slow databases and web-based interfaces, the issue is one concerning the quality of service Verizon is providing in regard to its obligations under the 1996 Act. Consequently, the key analytical point becomes whether the manner by which Verizon makes these facilities available to Cavalier is "reasonable" under the 1996 Act. The end result is that Cavalier is attempting to take a claim that Verizon is not living up to its duties as established by the 1996 Act and transform it into a monopolization claim.

Cavalier then turns to the assignment of facilities, alleging that Verizon uses systems and procedures that cause delays and make the process expensive. Complaint, ¶¶ 83-90. The Complaint, again without mentioning the 1996 Act, states that Verizon uses an inaccurate database to track the availability of ports, which are essential in connecting last-mile facilities. Complaint, ¶¶ 85-88. The 1996 Act mandates that Verizon make unbundled network elements available and that it do so in a manner that "allows requesting carriers to combine such elements in order to provide

such telecommunications service." 47 U.S.C. § 251(c)(3). The Complaint leaves no doubt that Cavalier is basically challenging the reasonableness of Verizon's provision of certain facilities, specifically ports and last-mile facilities, as covered in the 1996 Act.

Cavalier then, in some detail, raises issues about the provision of last-mile facilities. It generally contends that Verizon has refused to provide integrated digital loop carriers, that certain facilities provided by Verizon either have a disproportionate number of problems or simply do not function properly, that Verizon has disconnected Cavalier customers and overbilled Cavalier customers, that Verizon has made the process for directory assistance listings and listings in directory publications burdensome, that Verizon has imposed costly "loop conditioning" charges as a means of making Cavalier's efforts to offer such services as digital subscriber line services too costly, and that Verizon has frustrated Cavalier's efforts to resolve these issues. Complaint, ¶¶ 91-125.

Again, Cavalier is doing nothing more than arguing about the quality of the assistance Verizon is providing under the 1996 Act. The difficulty in construing these issues as claims of monopolization stems

---

**3.** Cavalier's allegation that Verizon employees contacted Cavalier's existing and potential customers in an attempt to draw business away from Cavalier is the single factual allegation in the Complaint that addresses anticompetitive behavior and does not concern a duty imposed by the 1996 Act. However, this issue alone, when coupled with the multiple violations of the 1996 Act that Cavalier basically alleges without referencing the Act itself, is not enough to support a monopolization claim.

In fact, the *Goldwasser* court faced a similar scenario. After determining that many of the claims detailed in that complaint fell outside of antitrust and within the parameters of the 1996 Act, the Seventh Circuit dismissed a more general antitrust claim on the basis that

it was "inextricably linked" to other claims. *Goldwasser*, 222 F.3d at 400.

Cavalier's claim that Verizon employees contacted current or potential Cavalier customers and made certain misrepresentations—although it cannot be properly characterized as a general antitrust claim—suffers the same fate. In fact, Cavalier makes this allegation as an illustration of how Verizon's ordering process has resulted in "marketing disadvantages" for Cavalier. Complaint, ¶¶ 66-71. As a result, the allegation itself represents, at best, an extension of Cavalier's contentions about ordering—an issue covered by the 1996 Act and its mandate that Verizon provide interconnection, unbundled access, and collocation under reasonable rates and conditions.

from the simple fact that the 1996 Act dictates that Verizon provide such services under reasonable conditions. Absent the 1996 Act, Verizon undoubtedly would not provide such assistance to Cavalier. Despite Cavalier's efforts to portray it as otherwise, the issue of the provision of last-mile facilities revolves entirely around whether or not Verizon's actions comport with what the 1996 Act mandates.

Cavalier next moves to network-related problems. In its Complaint, it argues that Verizon has made it difficult for Cavalier to mount fiber on Verizon's utility poles, has made it difficult for Cavalier to use Verizon's spare fiber-optic cable, and has generally impeded Cavalier's access to spare fiber. Complaint, ¶¶ 126–136. In addition to requiring interconnection, unbundled access, and collocation, the 1996 Act requires that Verizon allow access to poles, conduits, and ducts. 47 U.S.C. §§ 251(a)(1), 251(b)(4), 251(c)(2), 251(c)(3), 251(c)(6). Cavalier's allegations on this point boil down to an argument that Verizon is not allowing Verizon proper access to utility poles and is generally not making reasonable accommodations when it comes to interconnection and collocation. As such, Cavalier is not making a monopolization argument as much as it is criticizing the manner in which Verizon is fulfilling its duties under the 1996 Act. Regardless of whether such criticism is warranted, the issues Cavalier raises cannot simply be separated from the duties imposed by the

1996 Act and brought to federal court under the guise of the Sherman Act.

Lastly, Cavalier alleges that Verizon has made the billing process regarding last-mile facilities costly by applying the wrong rates, not complying with the Bell Atlantic/GTE Merger Order, and by refusing to adjust charges to third parties. Complaint, ¶¶ 137–143. Under the 1996 Act, Verizon must provide interconnection, collocation, and unbundled network elements under reasonable conditions and at reasonable terms and rates. 47 U.S.C. §§ 251(c)(2), 251(c)(3), 251(c)(6). By attacking the billing process, Cavalier is essentially asserting that Verizon is behaving unreasonably in billing Cavalier for the services the 1996 Act mandates that Verizon provide to Cavalier. Such allegations, therefore, are grounded in the 1996 Act and do not amount to a monopolization claim.

 Viewing these seven categories of allegations in their totality, it is evident that Cavalier is not asserting a monopolization claim under the Sherman Act, but rather is detailing alleged violations of duties imposed upon Verizon by the 1996 Act. Often the issue is not whether Verizon is providing the facility or service as directed by the 1996 Act, but whether Verizon is providing the facility or service to Cavalier in a manner that fits within the standard of reasonableness established by the 1996 Act.[4] Regardless of whether such factual allegations have merit, they do not

---

4. Verizon's actions, as detailed in Cavalier's Complaint, also do not rise to the level of predatory behavior. In *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), the Supreme Court recognized that monopolists have a qualified right to do business with whom they choose. *Id.* at 602–3, 105 S.Ct. 2847. Exclusionary or predatory conduct, however, does not fall within the contours of this qualified right. *Id.* at 602–5, 105 S.Ct. 2847. Predatory conduct "(1) tends to impair the opportunities of rivals, but also (2) either does not further competition on the merits or

does so in an unnecessarily restrictive way." *Id.* at 605 n. 32, 105 S.Ct. 2847 (quoting 3 P. Areeda & D. Turner, Antitrust Law 78 (1978)).

Cavalier's allegations concern the manner in which Verizon is meeting its responsibilities under the 1996 Act. Although some of Cavalier's claims do contain egregious allegations of violations of the 1996 Act, its contentions are generally about the quality of the services and facilities offered. Claims that a particular process is overly complex, that overbilling has occurred, and that certain databases and interfaces contain inaccurate information do not amount to predatory conduct.

state a claim for monopolization.[5] Verizon's Motion to Dismiss the monopolization claim is, therefore, granted.

### B. Count Two: Attempted Monopolization

Substantively, there is little difference between this claim and Cavalier's monopolization claim. Cavalier simply re-asserts its previous claims and states that Verizon has the "specific intent" to monopolize the basic telecommunications services markets.[6] Since Cavalier's allegations do not state a claim for monopolization, they cannot be said to be sufficient to support a claim of attempted monopolization. Verizon's Motion to Dismiss is, therefore, granted in regard to this claim.

### C. Count Three: Violation of the Lanham Act

■■■ This claim relates to Cavalier's allegations that Verizon employees misrepresented to potential Cavalier customers the cost and availability of certain Cavalier services and attempted to convince these consumers not to purchase services from Cavalier. Cavalier offers no specifics in the form of names and dates. Furthermore, it provides no indication of how many potential customers it believes Verizon contacted.

■■■ Cavalier nevertheless argues that Verizon's actions constitute a violation of § 43(a) of the Lanham Act, which allows civil liability for misleading commercial advertising. See 15 U.S.C. § 1125. To make out a claim under § 43(a), a plaintiff must show that the misleading statements were commercial speech made by a competitor in an attempt to influence consumers. Such representations must be disseminated widely enough that they constitute advertising or promotion. Neurotron Inc. v. Am. Assoc. of Electrodiagnostic Medicine, 189 F.Supp.2d 271, 275 (D.Md.2001) (quoting Gordon & Breach Science Publishers, S.A. v. American Institute of Physics, 859 F.Supp. 1521, 1536 (S.D.N.Y.1994)); Black & Decker (U.S.) Inc. v. Pro–Tech Power Inc., 26 F.Supp.2d 834, 861–62 (E.D.Va. 1998). Generally, to survive a 12(b)(6) motion, a plaintiff claiming false advertisement under the Lanham Act must raise "sufficiently particularized allegations of false or misleading misrepresentations...." Mylan Labs., 7 F.3d at 1138.

■■■ Cavalier does allege that misleading statements were made in "commercial advertising or promotion," but it provides no meaningful details. Complaint, ¶¶ 70–71, 198–205. In determining whether misleading statements constitute commercial speech both the method of communication and the purpose of the communication are instructive. Huntingdon Life Sciences v. Rokke, 978 F.Supp. 662, 666 (E.D.Va.1997). In the present case, Verizon's directory publication personnel and sales personnel allegedly contacted Cavalier customers and made misrepresentations in an effort to persuade these customers not to purchase services from Cavalier.

Such alleged misrepresentations could be sufficient to fit within the rather broad definition of commercial speech.[7] Whether

---

5. Cavalier also bases part of its monopolization claim on a section of the Virginia authorizing treble damages for willful conduct. Va.Code § 59.1–9.12(b). But, since the Virginia Antitrust Act is to be harmonized with federal antitrust law, Cavalier's state law antitrust claims must fail if its federal antitrust claims fail. Oksanen v. Page Memorial Hospital, 945 F.2d 696, 710 (4th Cir.1991).

6. A claim for attempted monopolization under § 2 of the Sherman Act has three elements: (1) the specific intent to monopolize the relevant market, (2) predatory or anticompetitive acts, and (3) a "dangerous probability" of success. M & M Medical Supplies & Service, Inc. v. Pleasant Valley Hospital, Inc., 981 F.2d 160, 166 (4th Cir.1992).

7. The Fifth Circuit, for example, examined the issue in Seven–Up Co. v. Coca–Cola Co., 86

such misrepresentations actually qualify as commercial speech depends on the number of alleged contacts or misrepresentations made in relation to the total market. *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1386 (5th Cir.1996). If the total market is small, isolated contacts may be enough. In the present case, Cavalier alleges that Verizon employees made misrepresentations to an unspecified number of potential or existing Cavalier customers. A fair reading of these allegations, however, suggests that Verizon employees contacted Cavalier customers on multiple occasions for the apparent purpose of winning customers away from Cavalier.

Cavalier's allegations, however, remain far too vague to meet the particularity requirement. This fact becomes obvious when, as Verizon points out, this unspecified number of alleged contacts with Cavalier customers is placed in the context of a total market of at least several million Virginia telecommunications consumers. In such an expansive market, an unspecified number of isolated contacts cannot meet the standard of commercial advertising or promotion. As a result, Verizon's Motion to Dismiss is granted in regard to this claim.

### D. Count Four: Violation of the Communications Act of 1934

■ Cavalier also asserts the Verizon violated the Communications Act of 1934 ("the 1934 Act") by failing to provide physical connections for Cavalier and by imposing unjustly high rates.[8] Under 47 U.S.C. §§ 201, 202, ILECs are required to provide certain physical connections and to refrain from discrimination in charges and practices. 47 U.S.C. §§ 201–02.

Under the 1996 Act, however, parties that have entered into an interconnection agreement, as Cavalier and Verizon have, are bound by that agreement and their obligations are governed by that agreement. The FCC is clear on this point. It has indicated that local carriers have the choice of either pursuing an interconnection agreement under §§ 251 and 252 or of "taking tariffed interstate service" under expanded interstate connection rules. *See* First Report and Order, In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, 11 FCC Rcd 15499, 15809, ¶ 611 (1996).

### *ORDER*

THIS MATTER is before the Court on the Defendant's Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed in the attached Memorandum Opinion, the Motion is GRANTED in FULL.

Let the Clerk send a copy of this Order to all counsel of record.

And it is SO ORDERED.

---

F.3d 1379 (5th Cir.1996), indicating that informal types of promotion can classify as "commercial advertising" if such promotion is done for the purpose of promoting and product and is "disseminated sufficiently" within the particular industry. *Id.* at 1384–85 (quoting *Gordon & Breach*, 859 F.Supp. at 1535–36). Indeed, § 43(a) can apply to fundraising letters and even to instances where a person badmouths a.former employer in telephone calls to friends and colleagues. *See Gordon & Breach*, 859 F.Supp. at 1535 (citations omitted).

8. Cavalier requests an award of monetary damages under § 207, attorney's fees under § 206, $500 million in punitive damages, and a permanent injunction on this count.