**TAO OF SYSTEMS INTEGRATION, INC., Plaintiff,**

v.

**ANALYTICAL SERVICES & MATERIALS, INC., Defendant and Counterclaim Plaintiff,**

v.

**Tao of Systems Integration, Inc., Dr. Siva Mangalam, Counterclaim Defendants.**

**No. CIV.A. 403CV67.**

United States District Court, E.D. Virginia, Newport News Division.

Jan. 8, 2004.

Virginia M. Sadler, Esquire, Zuckerman Spaeder LLP, Washington, DC, Counsel for plaintiff and Dr. Siva Mangalam.

David K. Sutelan, Esquire, George H. Bowles, Esquire, Troutman Sanders LLP, Norfolk, VA, for defendant and Analytical Services & Materials, Inc.

### OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on three motions: defendant Analytical Services & Materials, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff's motion to amend the complaint pursuant to Federal Rule 15(a), and plaintiff's motion to dismiss defendant's counterclaim pursuant to Federal Rule 12(b)(6). For the reasons set forth below, plaintiff's motion to amend the complaint is **GRANTED**, defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part, and plaintiff's motion to dismiss the counterclaim is **DENIED**.

### I. Factual and Procedural History

Plaintiff Tao of Systems Integration, Inc. ("Tao") filed the instant complaint, alleging four counts of federal and state claims against defendant Analytical Services & Materials, Inc. ("AS & M"). Counts One and Two allege claims for "reverse passing off" and false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) & (a)(1)(B) (2000). Count Three alleges a claim for misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act ("VUTSA"), Va.Code. Ann. § 59.1–336 to –343 (Michie 2001). Count Four alleges a claim of unjust enrichment under Virginia common law. AS & M filed a counterclaim, also alleging a claim for misappropriation of trade secrets under VUTSA.

Tao, a Virginia corporation headquartered in Williamsburg, Virginia, and AS & M, a Virginia corporation headquartered in Hampton, Virginia, both operate in the aeronautical engineering services market. Tao's claims stem from its allegation that AS & M misrepresented to the National Aeronautics and Space Administration ("NASA") that AS & M owned intellectual property and expertise which actually belonged to Tao. Tao alleges that as a result of these misrepresentations, AS & M was granted a valuable services contract by NASA. Moreover, Tao alleges that because NASA has come to associate Tao's intellectual property and expertise with AS & M, Tao has been unable to secure new contracts with NASA.

AS & M was founded in 1983 by Dr. Jalaiah Unnam. Dr. Unnam is the president of AS & M. From 1985 to 1994, Dr.

Siva Mangalam was employed at AS & M, and was, at least part of that time, a partner. In 1994, Dr. Mangalam left AS & M to found Tao. In March and April of 1994, AS & M and Dr. Mangalam executed several agreements regarding Dr. Mangalam's departure from AS & M. Among other provisions, these agreements assigned certain patents from AS & M to Dr. Mangalam or Tao. The agreements also assigned to Dr. Mangalam or Tao the rights and obligations of performance under certain contracts for projects funded by NASA and the Department of Defense through the Small Business Innovation Research ("SBIR") program.

On March 31, 1994, Tao executed an agreement with NASA's Langley Research Center, under which Tao would conduct flutter instrumentation testing at Langley Research Center's Transonic Dynamic Tunnel ("TDT"). The agreement provided that Tao and NASA would share the results of the project, but that the data would be considered proprietary to Tao. Tao conducted the flutter instrumentation testing from April 1994 through June 1994. One of the Tao engineers involved in the data analysis for this project was Dr. Subbiah Venkateswaran. On May 24, 1994, Dr. Venkateswaran participated in a slide presentation of some of the test results to Langley Research Center. In July 1994, Dr. Venkateswaran left the employ of Tao and began employment at AS & M.

In June 1995, AS & M filed a proposal ("the ETS Proposal") in response to a NASA request for proposals, RFP4–00001, for an Engineering and Technical Services contract with NASA's Dryden Flight Research Center in Edwards, California. Tao alleges that both Dr. Unnam and Dr. Venkateswaran participated in preparing in the ETS Proposal. Tao alleges that the ETS Proposal contained a number of misrepresentations in which AS & M took credit for expertise and capabilities belonging to Tao. Tao further alleges that the ETS Proposal suggested that AS & M, rather than Tao, had performed the TDT flutter testing at Langley Research Center. The ETS Proposal contained a figure, labeled "Typical Results from Flexible Wing During Flutter," which included data plots that Tao alleges are "substantially identical" to the data plots presented by Tao in the May 24, 1994 presentation to Langley Research Center. (Compl. ¶ 30; Am. Compl. ¶ 34.) AS & M was awarded the Engineering and Technical Services contract in 1995.

In 1998, AS & M received questionnaires called "Commercialization Metrics" from NASA headquarters, which asked the recipient to describe its efforts to commercialize innovations funded under the SBIR program. Tao alleges that AS & M responded to the questionnaire in part by providing information on projects that were carried out by Tao, misrepresenting Tao as a venture or subsidiary of AS & M.

Tao claims that alleged misrepresentations by AS & M had the effect of confusing NASA as to the nature of the two corporations and the services they provide. In support of this proposition, Tao points to a letter, sent by NASA headquarters in January 2002, which it alleges was addressed to "Dr. Jalaiah Unnam, President, Tao Systems/AS & M." (Compl. ¶ 36; Am. Compl. ¶ 42.) Tao also claims that it has been told by NASA officials on several occasions that, in order to apply its own expertise and innovations toward work with NASA, it would need to seek a subcontract from AS & M. Tao further alleges that it has been unable to obtain any "sole-source contracts" from NASA since AS & M was awarded the ETS contract in 1995. (Compl. ¶ 37; Am. Compl. ¶ 43.)

In the late summer of 2001, Dr. Mangalam received a copy of AS & M's ETS

Proposal from an unidentified third party. Tao filed its original complaint against AS & M on May 21, 2003. AS & M filed a motion to dismiss all four counts for failure to state a claim, to which Tao filed a response, and AS & M replied. AS & M also filed an answer to Tao's original complaint, after which Tao attempted to file an amended complaint adding as defendants Dr. Unnam and Dr. Venkateswaran. The amended complaint was filed subject to defect because Tao had failed to receive leave of the court to file it. Tao then filed a motion requesting the court's leave to file the amended complaint, to which AS & M has responded, and Tao has replied.

AS & M also filed a counterclaim, claiming that in acquiring a copy of AS & M's confidential ETS Proposal, Dr. Mangalam and Tao had misappropriated AS & M's trade secrets. Tao and Dr. Mangalam filed an answer to AS & M's counterclaim and moved to dismiss the counterclaim for failure to state a claim. AS & M filed a response and Tao replied. Accordingly, all motions are now ripe for review.

## II. Legal Standards

■ Leave of the court is required to amend a pleading when either a responsive pleading has been served, Fed.R.Civ.P. 15(a), or the amending party seeks to add a party, *United States v. Thomas Howell Kiewit, Inc.,* 149 F.R.D. 125, 126 (E.D.Va. 1993). The court's leave "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). A motion to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986)). Defendants are not required to file a new motion

to dismiss simply because an amended pleading was introduced while their motion was pending. 6 Charles Alan Wright *et al., Federal Practice and Procedure* § 1476, at 558 (2d ed.1990). If some of the defects raised in the original motion remain in the new pleading, the court will consider the motion as being addressed to the amended pleading. *Id.*

■ A complaint should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995). The court must accept the complaint's factual allegations as true and view all allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

■ Dismissal on a motion pursuant to Rule 12(b)(6) is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996). "A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading." *Id.* (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 352 (2d ed.1990)).

## III. Analysis

### A. Tao's Motion to Amend the Complaint

■ Tao seeks to file an amended complaint in order to clarify certain allegations

stated in the original complaint, and to add as defendants Dr. Unnam and Dr. Venkateswaran. Leave of the court is required for two reasons: (1) AS & M has already filed a responsive pleading, Fed.R.Civ.P. 15(a); and (2) Tao is seeking to add parties, *Thomas Howell Kiewit, Inc.*, 149 F.R.D. at 126. As indicated *supra* Part II, a motion to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*, 178 F.3d at 242 (quoting *Johnson*, 785 F.2d at 509). Because Tao's amended complaint is not prejudicial to AS & M, made in bad faith, or futile, it is appropriate for the court to permit amendment.

As the motion to amend was filed at an early stage in the litigation, permitting amendment will not result in prejudice to AS & M. *See Thomas Howell Kiewit, Inc.*, 149 F.R.D. at 126. Tao's desire to amend appears to stem from a good faith belief in legitimate claims against the parties sought to be added, rather than a bad faith attempt to manipulate the court's jurisdiction or cause undue delay. Moreover, the claims asserted in Tao's amended complaint are not clearly frivolous or patently defective such that leave should be denied. Accordingly, the court GRANTS Tao's motion to amend the complaint.

## B. AS & M's Motion to Dismiss for Failure to State a Claim

Tao's amendment complaint consists of four counts: (1) reverse passing off, in violation of § 43(a) of the Lanham Act; (2) false advertising, in violation of § 43(a) of the Lanham Act; (3) trade secret misappropriation, in violation of the Virginia Uniform Trade Secrets Act; and (4) unjust enrichment, in violation of the common law of Virginia. AS & M seeks dismissal of each count for failure to state a claim. As

the arguments raised in AS & M's motion to dismiss can be applied to Tao's amended complaint, and memoranda from both Tao and AS & M have argued their merits in light of the sought amendment, the court will consider the motion as being addressed to the amended pleading. 6 Wright *et al.*, *supra* § 1476, at 558.

### 1. Reverse Passing Off

"The typical § 43(a) Lanham Act claim is brought by a plaintiff who is in competition with the defendant, and charges the defendant with using a mark—a brand name, a word, 'a slogan, a symbol, a combination of words and symbols, an ornamental feature, a distinctive shape, or something else intended to remind the consumer of the brand'—so similar to that of the plaintiff's that the public may be confused as to the source of the good or service." *Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 334 (4th Cir.1993) (quoting *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 609 (7th Cir.1986)). Although trademark protection is at the heart of the Lanham Act, § 43(a) also reaches a limited number of non-trademark scenarios. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, ——, 123 S.Ct. 2041, 2045, 156 L.Ed.2d 18 (2003).

Among these, § 43(a) creates a civil cause of action for a false designation of origin made in connection with goods or services. 15 U.S.C. § 1125(a). Because "origin" refers not only to geographical origin, but also to the origin of source or manufacture, a claim of "reverse passing off" is actionable under § 43(a) as a false designation of origin. *Id.* at 2044–46. Just as "passing off" occurs when a producer misrepresents his own product as someone else's, "reverse passing off" occurs when a producer misrepresents someone else's goods or services as his own.

*Id.* at 2045 n. 1. The "origin" of a good or service is the producer of the tangible product offered for sale, not the author of any idea or concept embodied in that product. *Id.* at 2049.[1] The goods or services which are examined for a false designation of origin under a reverse-passing-off claim are those of the defendant. *Williams v. UMG Recordings, Inc.,* 281 F.Supp.2d 1177, 1184 (C.D.Cal.2003). Thus, the archetypal case of reverse passing off involves a defendant. who has sold goods which are actually the repackaged or relabeled goods of the plaintiff.

Tao in Count One does not allege a typical § 43(a) claim involving the misuse of a mark. Tao concedes as much, clarifying its general allegation of a claim under 15 U.S.C. § 1125(a)(1)(A) as an action for reverse passing off. (Pl.'s Opp'n to Mot. to Dismiss at 8–9.) The circumstances alleged by Tao, however, do not support such a claim. To state a claim for reverse passing off, Tao must allege that the actual goods provided to NASA by AS & M were in fact produced by Tao, or the actual services provided to NASA by AS & M were in fact performed by Tao. Neither Tao's amended complaint nor any other filing in this case provides a basis for suspecting that the goods and services which AS & M contracted to provide to NASA were actually provided by Tao.

Instead, Tao alleges that defendants "made both false and misleading representations of fact in the ETS Proposal." (Am. Compl.¶ 48.) The ETS Proposal may be an offer to contract, an advertisement, or a promotion, but it is not a good or service. Moreover, even if the ETS Proposal argu-

ably was a good or service, there is no allegation that Tao, rather than AS & M, was the actual producer of the ETS Proposal. Tao instead appears to claim that AS & M, in producing its own ETS Proposal, incorporated ideas or concepts that belonged to Tao. This, however, is precisely the type of allegation which the Supreme Court rejected as the basis for a reverse-passing-off claim in *Dastar Corporation v. Twentieth Century Fox Film Corporation,* 539 U.S. at ——, 123 S.Ct. at 2049. Accordingly, Tao's claims of reverse passing off against all defendants under 15 U.S.C. § 1125(a)(1)(A) are **DISMISSED.**

### 2. *False Advertising*

■ Section 43(a) of the Lanham Act provides a civil cause of action against a person who misrepresents the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Section 43's reach is broader than merely the "classic advertising campaign." *Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics,* 859 F.Supp. 1521, 1534 (S.D.N.Y. 1994). For representations to constitute "commercial advertising or promotion" within the meaning of § 43(a), they must be (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *Id.* at 1536.[2]

---

1. To the extent that the author of any idea or concept embodied in a product may have a remedy under federal law, it is to be found in copyright, patent, or the false advertising provisions of the Lanham Act. *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, ——, 123 S.Ct. 2041, 2049, 156 L.Ed.2d 18 (2003).

2. Although the court of appeals for the Fourth Circuit has not yet provided a test defining advertising or promotion for purposes of the

Both the level of dissemination required to constitute commercial advertising or promotion and the size of the relevant purchasing public will vary from industry to industry and from case to case. *See Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1385 (5th Cir.1996); *Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F.Supp. 1072, 1078 (N.D.Ill.1993). Whether such misrepresentations actually qualify as advertising or promotion depends on the number of alleged contacts or misrepresentations made in relation to the total market. *Cavalier Tel., LLC v. Verizon Va. Inc.*, 208 F.Supp.2d 608, 617–18 (E.D.Va.2002). If the total market is small, isolated contacts may be enough. *Id.* at 618.

In various scenarios, courts have found that communications to a very limited number of consumers can reach the required level of dissemination to constitute commercial advertising or promotion. *E.g., Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir.1999) (holding that a representation to one of two or three institutions involved in nationwide refinancing operations could constitute promotion); *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1386 (5th Cir.1996) (holding that a sales presentation made to eleven of seventy-four soft drink bottlers constituted advertising or promotion); *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F.Supp. 1224, 1235 (S.D.N.Y.1991) (holding that, in the context of the theatre-booking industry, telephone contact with twenty consumers was commercial advertising or promotion).

Where it is clear, however, that the relevant market is large and that the alleged contacts are comparatively trivial, dismissal for failure to state a claim is appropriate. *E.g., Cavalier Tel., LLC*, 208 F.Supp.2d at 618 (holding that an unspecified number of alleged contacts in a market of several million telecommunications consumers fails to state a claim); *Lampi Corp. v. American Power Prods.*, 1994 WL 501996, *2, 1994 U.S. Dist. LEXIS 12828, *5–6 (N.D.Ill. Sept. 12, 1994) (declining to dismiss under 12(b)(6) where "both companies sell to primarily nationwide chains, so making statements and sales presentations to representatives of only a few such chains could have a large impact in the industry"). Dismissal on summary judgment is available when appropriate evidence demonstrates that the market is large enough such that the proven contacts do not constitute advertising or promotion. *E.g., Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir.2002); *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1005 (10 Cir.2002).

■ AS & M raises two challenges to the sufficiency of Tao's false advertising claim. First, AS & M argues that Tao fails to allege the two companies competed commercially. Second, AS & M argues that Tao's allegations do not meet the legal standard of commercial advertising or promotion. However, the allegations of Tao's amended complaint are more than sufficient to support its claim of commercial competition. Tao alleges that both it and AS & M operate in the aeronautical engineering services market (Am.Compl.¶¶ 2–3), and that both companies have provided aeronautical engineering services to NASA (*id.* ¶¶ 3, 12, 20). Tao further alleges that,

---

Lanham Act, the *Gordon & Breach* test has been cited with approval by the bulk of courts that have considered the issue. *E.g., Fashion Boutique Of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir.2002); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir.2000); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir.1999); *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1384 (5th Cir.1996).

as a subcontractor to another company, it competed for the ETS contract which was granted to AS & M and which provides the subject of this litigation. (*Id.* ¶¶ 27–28.) No more is required at this stage of the litigation.

AS & M additionally challenges whether Tao's allegations meet the legal standard for commercial advertising or promotion. Accepting Tao's factual allegations as true and viewing all allegations in a light most favorable to Tao, as this court must at this juncture, it does not appear to a certainty that Tao cannot prove any set of facts in support of its false advertising claim. As already discussed, the determination whether particular communications constitute advertising or promotion is dependant upon the industry in question. While the conduct alleged against AS & M—the submission of a proposal in response to a NASA request—is not advertising in the traditional sense of the term, the court cannot conclude at this time that it is insufficient to support Tao's claim. Just as "in the context of the theatre-booking industry ... 'services' are 'promoted' by word-of-mouth and ... telephone contacts with producers, promoters, and presenters," *Nat'l Artists Mgmt. Co.,* 769 F.Supp. at 1235, it is reasonable to infer that in the aeronautical engineering industry, services are promoted through proposals to the relevant government agency.

Additionally, Tao has alleged sufficient dissemination of AS & M's allegedly false statements throughout the relevant purchasing public. Although Tao does not state specific claims regarding the size of the relevant consuming public for its services, it alleges that "Tao Systems has been unable to obtain any sole-source contracts with NASA," and that "Dr. Mangalam was told on several occasions by NASA officials that, in order to apply his *own* expertise and innovation toward work with NASA, he would need to seek a subcontract from AS & M." (Am.Compl.¶ 43.) While such generalized allegations alone would not be enough to survive a Rule 56 motion, they are sufficient to meet the lesser requirements of Rule 12(b)(6). Viewing these allegations in a light most favorable to Tao, it does not appear to a certainty that Tao cannot prove any set of facts to support its false advertising claim. Thus, the motion to dismiss Count Two for failure to state a claim is **DENIED.**

### 3. *Misappropriation of Trade Secrets*

The Virginia Uniform Trade Secrets Act provides a cause of action for misappropriation of a trade secret. Va. Code Ann. § 59.1–338 (Michie 2001). Under VUTSA, a trade secret is "information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process," that (1) derives independent economic value from not being generally known, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Id.* § 59.1–336. The secrecy need not be absolute; the owner of a trade secret may, without losing protection, disclose it to a licensee, an employee, or a stranger, if the disclosure is made in confidence, express or implied. *Dionne v. Southeast Foam Converting & Packaging, Inc.,* 240 Va. 297, 397 S.E.2d 110, 113 (1990). Although the subject of a trade secret may be novel in the sense that it is something generally unknown in the trade or business, "[n]ovelty, in the patent law sense, is not required for a trade secret." *Id.* (quoting *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 476, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974)). A trade secret "may be a device or process which is clearly anticipated in the prior art or one which is merely a mechanical improvement that a good mechanic can make." *Id.* (quoting *Restatement of Torts* § 757 cmt. b (1939)).

Under VUTSA, a number of acts can constitute misappropriation, including disclosure or use of a trade secret without consent by a person who, at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was either (1) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (2) derived from or through a person who owed a duty to maintain its secrecy or limit its use. Va.Code Ann. § 59.1–336. An employer can be held vicariously liable for trade secret misappropriation committed by an employee acting within the scope of his employment. *Newport News Indus. v. Dynamic Testing*, 130 F.Supp.2d 745, 754 (E.D.Va.2001). Generally, a former employee has a duty not to reveal confidential information obtained through his employment, and not to use such confidential information after he has left his employment. *Bull v. Logetronics, Inc.*, 323 F.Supp. 115, 133 (E.D.Va.1971).

Tao alleges misappropriation of three trade secrets: (1) the TDT flutter test data and analysis; (2) certain patents; and (3) enhancements, refinements, and improvements that Tao has made to those patents. For the reasons set forth below, Tao's amended complaint states a claim for misappropriation of the TDT flutter test materials, but not for the patents or their refinements.

Tao alleges the necessary elements to state a misappropriation claim for the TDT flutter test data and analysis. Tao alleges that it made efforts to preserve the secrecy of the TDT flutter test materials. (Am.Compl.¶ 58.) Tao further alleges that Dr. Venkateswaran, a former Tao employee, took the TDT flutter test materials from Tao and provided them to AS & M in contravention of his duty to not reveal confidential information obtained through his employment. (*Id.* ¶ 64.)

These allegations are sufficient to maintain a misappropriation claim for the TDT flutter test materials against Dr. Venkateswaran.

Tao can also maintain a misappropriation claim for the TDT flutter test materials against AS & M and Dr. Unnam. Tao alleges that AS & M and Dr. Unnam "used" the TDT flutter test materials by including them in the ETS Proposal. (*Id.* ¶ 65.) For the purposes of a motion under Rule 12(b)(6), it is reasonable to infer that, at the time of use, AS & M and Dr. Unnam either knew or had reason to know that Dr. Venkateswaran owed a duty to Tao to maintain the secrecy of the TDT flutter test materials. Moreover, as Dr. Venkateswaran's employer, AS & M can be held vicariously liable for his acts of trade secret misappropriation committed within the scope of his employment. Thus, Tao has stated claims for trade secret misappropriation of the TDT flutter test materials against all three defendants.

The Tao patents, however, cannot provide the basis for a trade secret misappropriation claim. As already noted, information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy" in order to qualify as a trade secret. Va.Code Ann. § 59.1–336. Under federal law, files relating to a granted patent are open to the public and available for copying. 37 C.F.R. § 1.11 (2003); 37 C.F.R. § 1.13. Information which is publicly disclosed is not the subject of efforts to maintain its secrecy. Thus, the Tao patents are not trade secrets and cannot provide the basis for a trade secret misappropriation cause of action.

Although the enhancements, refinements, and improvements that Tao has made to its patents may have been the subject of reasonable efforts to maintain their secrecy, Tao cannot maintain a mis-

appropriation claim for this information, as the acts that it alleges do not constitute misappropriation. Under VUTSA, an act of misappropriation must involve either the acquisition, disclosure, or use of a trade secret. Va.Code Ann. § 59.1–336. Tao does not allege that any of the defendants improperly acquired, disclosed, or used the enhancements, refinements, and improvements to the Tao patents. Rather, Tao claims that "[b]y making the false and misleading statements in the ETS proposal regarding ·Tao Systems' innovations, defendants misappropriated Tao System's [sic] trade secrets." (Am.Compl.¶ 69.) To falsely claim to have certain information does not constitute the acquisition, disclosure, or use of that information. Tao has not alleged that its patent refinements were misappropriated within the meaning of VUTSA, and cannot maintain a misappropriation claim for the patent refinements.

Accordingly, Tao's claims of trade secret misappropriation of its patents and patent refinements are **DISMISSED** as to all defendants. The motion to dismiss Tao's claim of trade secret misappropriation of the TDT flutter testing materials is **DENIED**.

### 4. Unjust Enrichment

■ Tao claims that by misrepresenting Tao's technology and trade secrets as their own, defendants were unjustly enriched. Under Virginia law, an action for unjust enrichment is quasi-contractual in nature. *Acorn Structures v. Swantz,* 846 F.2d 923, ·926 (4th Cir.1988); *Kern v. Freed Co.,* 224 Va. 678, 299 S.E.2d 363, 364–65 (1983). To establish the quasi-contract, a plaintiff must show three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Nossen v. Hoy,* 750 F.Supp. .740, 744–45 (E.D.Va.1990).

■ A disappointed bidder for a government contract cannot maintain an unjust enrichment cause of action against a successful bidder for the value of that contract. *John C. Holland Enterprises, Inc. v. J.P. Mascaro & Sons, Inc.,* 653 F.Supp. 1242, 1247 (E.D.Va.), *aff'd without opinion,* 829 F.2d 1120 (4th Cir.1987). To bring an action to recover monies received by the defendant from a third party, a plaintiff must demonstrate that he had a preexisting right to that fund. *Id.* at 1246; *City of Norfolk v. Norfolk County,* 120 Va. 356, 91 S.E. 820, 826 (1917). As no party has a right to a government contract prior to its award, there can be no cause of action for unjust enrichment on this basis. *Holland Enterprises, Inc.,* 653 F.Supp. at 1246.

■ The three-year Virginia statute of limitations applicable to oral contracts, Va.Code Ann. § 8.01–246(4) (Michie 2000), also applies to unjust enrichment actions. *Belcher v. Kirkwood,* 238 Va. 430, 383 S.E.2d 729, 731 (1989). The statute of limitations for unjust enrichment begins to run at the time the unjust enrichment occurred, which is the moment the expected compensation is not paid, *Primrose Dev. Corp. v. Benchmark Acquisition Fund I, L.P.,* 47 Va. Cir. 296, 298 (1998), not when a party "knew or should have known" of the unjust enrichment, *Tsui v. Sobral,* 39 Va. Cir. 486, 489 (1996).

In this case, the unjust enrichment occurred, if at all, at the moment defendants received a benefit from Tao without paying for its value. Tao claims that defendants were conferred a benefit by misrepresenting Tao's technology and trade secrets as their· own. (Am.Compl.¶ 72.) AS & M

filed its ETS Proposal in June 1995 (Am. Compl. ¶ 27), was awarded the ETS contract in 1995 (*id.* ¶ 43), and responded to the NASA Commercialization Metrics in 1998 (*id.* ¶ 40). Assuming *arguendo* that any of these actions constituted unjust enrichment, plaintiff's cause of action was not filed until May 21, 2003, more than three years after any of these events. Any arguable cause of action for unjust enrichment is barred by the statute of limitations.

All claims for unjust enrichment against all defendants are **DISMISSED.**

### C. Tao's Motion to Dismiss for Failure to State a Claim

 As discussed *supra* Part III.B.3, the Virginia Uniform Trade Secrets Act provides a cause of action for misappropriation of a trade secret. Va.Code Ann. § 59.1–338. As previously discussed, under VUTSA, a trade secret must both (1) derive independent economic value from not being generally known, and (2) be the subject of reasonable efforts to maintain its secrecy. *Id.* § 59.1–336. Acts of misappropriation include the acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means. *Id.*

AS & M claims that, by obtaining of copy of AS & M's ETS Proposal, Dr. Mangalam and Tao have misappropriated AS & M trade secrets. AS & M alleges that the information contained in the ETS Proposal both (1) derives value from not being generally known (Countercl. ¶ 12), and (2) is the subject of reasonable efforts to maintain its secrecy (*id.* ¶¶ 8, 18–21). Additionally, AS & M alleges that, by virtue of a notice placed on the first page of the ETS Proposal (*id.* ¶ 18), federal law under 18 U.S.C. § 1905 prohibiting the disclosure of confidential information by government employees (*id.* ¶ 20), and Dr.

Mangalam's nine years of experience working at AS & M (*id.* ¶ 22), both Dr. Mangalam and Tao had reason to know that the ETS Proposal had been acquired by improper means. AS & M even alleges a motive, claiming that Tao acquired the ETS Proposal in the late summer of 2001 (*id.* ¶ 9) in order to use it in preparing Tao's own proposal in response to NASA's re-solicitation of the ETS contract on July 11, 2001 (*id.* ¶ 14).

In response, Tao argues that the only trade secrets contained in the ETS Proposal are its own trade secrets, which it cannot misappropriate. Accepting AS & M's factual allegations as true and viewing all allegations in a light most favorable to AS & M, however, it is reasonable to infer that the ETS Proposal contains trade secrets other than those which may belong to Tao. As it does not appear to a certainty that AS & M cannot prove any set of facts in support of its claim, the motion to dismiss the counterclaim is **DENIED.**

### IV. Conclusion

For the reasons stated above, the court **GRANTS** plaintiff Tao of Systems Integration, Inc.'s motion to amend the complaint. The court **GRANTS** defendant AS & M's motion to dismiss Counts One and Four for failure to state a claim, **DISMISSING** the reverse-passing-off and unjust enrichment claims against all defendants. The court **DENIES** the motion to dismiss the Count Two claim of false advertising. The court **GRANTS** the motion to dismiss the Count Three claims of trade secret misappropriation of patents and patent refinements, **DISMISSING** these claims against all defendants. The court **DENIES** the motion to dismiss the Count Three claim of trade secret misappropriation of the TDT flutter test materials. The court **DENIES** the motion by Tao to dismiss the counterclaim for misappropria-

tion of trade secrets. AS & M shall further respond, as appropriate, to any remaining counts of the amended complaint within fourteen (14) days of the date of this Opinion and Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all parties.

**IT IS SO ORDERED.**