[No. 46791-3-I.   Division One.   September 17, 2001.]

JEROME SCHNEIDER, *Appellant*, v. AMAZON.COM, INC., ET AL., *Respondents*.

456

*Michael D. Myers* (of *Myers & Parker*), for appellant.

*Elizabeth L. McDougall-Tural* (of *Perkins Coie*), for respondents.

ELLINGTON, J. — The Communications Decency Act immunizes Amazon.com, Inc. from liability for allegedly defamatory comments posted by third parties on Amazon's website. We therefore affirm dismissal of all claims against Amazon.

## FACTS

Jerome Schneider wrote several books relating to taxation and asset protection. The books are for sale at the website of Amazon.com, Inc. (Amazon). In addition to enabling purchases, Amazon's website provides a forum for visitors to air their opinions about books. Amazon sets the following guidelines for comments:

> While we appreciate your comments, we respectfully request that you refrain from including the following in your review:
>
> - Profanity, obscenities, or spiteful remarks.
> - Time-sensitive material (i.e., promotional tours, seminars, lectures, etc.).
> - Single-word reviews. We want to know *why* you liked or disliked the book.
> - Comments focusing solely on the author.
> - No spoilers! Please don't reveal crucial plot elements.
> - Phone numbers, mail addresses, URLs.

- Availability, price, or alternative ordering/shipping information.[1]

Visitors to Amazon's website are informed that "Any review in violation of these guidelines may not be posted."[2] A visitor who submits a review grants Amazon a non-exclusive royalty-free right to use the review.

Amazon posted visitors' comments about Schneider and his books. The comments were negative; one alleged Schneider was a felon. Schneider's employee complained. Amazon's representative agreed that one or more of the postings violated the guidelines and should be removed, and promised to take steps to remove the postings within one to two business days. Two days later, the posting had not been removed.

Schneider filed an action for defamation and tortious interference with a business expectancy, naming Amazon and multiple "John and Jane Does." Amazon moved to dismiss under CR 12(b)(6) on grounds it was immune from liability under the Communications Decency Act of 1996, 47 U.S.C. § 230. Schneider then amended his complaint, deleting the defamation claim and alleging negligent misrepresentation, tortious interference, and breach of contract. The amended complaint alleges the anonymous postings contained "false, defamatory and/or scurrilous comments regarding Mr. Schneider and his business," and that Amazon exercises editorial discretion and decision-making authority over the posting of comments at its site.[3]

Amazon filed a second motion to dismiss on the same grounds. The trial court granted the motion and dismissed all claims against Amazon with prejudice. Schneider filed a motion for reconsideration requesting permission to amend the complaint to plead foreign law, which the trial court denied.

---

[1] Clerk's Papers at 59.

[2] Clerk's Papers at 59.

[3] Clerk's Papers at 28.

## DISCUSSION

■ ■ This court reviews a CR 12(b)(6) dismissal de novo.[4] Dismissal is appropriate only if it appears beyond a reasonable doubt that the complaint alleges no facts that would justify recovery.[5] The plaintiff's allegations and any reasonable inferences therefrom are accepted as true.[6] "If a plaintiff can prove any set of facts consistent with the complaint that would entitle him or her to relief, including hypothetical facts not in the formal record, then the claim should not be dismissed."[7]

Immunity under the Communications Decency Act

■ Under the Communications Decency Act of 1996 (CDA), interactive computer service providers are immune from publisher liability.[8] The statute provides in relevant part:

(c) Protection for "good samaritan" blocking and screening of offensive material

**(1) Treatment of publisher or speaker**

*No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.*

**(2) Civil liability**

No provider or user of an interactive computer service shall be held liable on account of—

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable,

---

[4] *Reid v. Pierce County*, 136 Wn.2d 195, 200-01, 961 P.2d 333 (1998).

[5] *Reid*, 136 Wn.2d at 200-01.

[6] *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 122, 11 P.3d 726 (2000).

[7] *Rodriguez v. Perez*, 99 Wn. App. 439, 442, 994 P.2d 874, *review denied*, 141 Wn.2d 1020 (2000).

[8] *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998).

whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).[9]

Three elements are thus required for § 230 immunity: the defendant must be a provider or user of an "interactive computer service"; the asserted claims must treat the defendant as a publisher or speaker of information; and the information must be provided by another "information content provider." Schneider argues none of these elements was satisfied here.

## 1. Amazon Is a Provider or User of Interactive Computer Services

■ The statute defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."[10] Thus, to qualify for immunity, a defendant must be a provider or user of an information service or system that "enables computer access by multiple users to a computer server." Schneider argues § 230 does not extend immunity to website hosts who do not enable access to the Internet.

■ Internet service providers (ISP) are recognized as § 230 providers of interactive computer services. The seminal decision is *Zeran v. America Online, Inc.*[11] There, a third party posted a message on an America Online (AOL) bulletin board, advertising T-shirts with tasteless slogans related to the bombing of the Oklahoma City federal building. Those interested in purchasing the T-shirts were in-

---

[9] 47 U.S.C. § 230(c)(1), (2) (emphasis added).

[10] 47 U.S.C. § 230(f)(2).

[11] 129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998).

structed to call the phone number Zeran used for personal and business purposes. Zeran received a staggering number of phone calls, consisting of angry and derogatory messages as well as death threats. Zeran contacted AOL several times and received assurances that the message would be removed and the responsible individual's account closed. Nevertheless, several more messages were posted on AOL, and the volume of death threats increased.

Zeran brought a negligence suit against AOL, seeking to hold AOL liable for the defamatory speech initiated by the third party. The Tenth Circuit affirmed dismissal of Zeran's complaint, holding "§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions."[12]

We find no case addressing application of the statute to interactive website operators.[13] But Amazon's website postings appear indistinguishable from AOL's message board for § 230 purposes. Schneider points out that website operators do not provide access to the Internet, but this is irrelevant. Under the statutory definition, access providers are only a subclass of the broader definition of interactive service providers entitled to immunity ("provides or enables computer access by multiple users to a computer server, including specifically a service . . . that provides access").[14] According to Schneider's complaint, Amazon's website enables visitors to the site to comment about authors and their work, thus providing an information service that necessarily enables access by multiple users to a server. This brings Amazon squarely within the definition.

Our holding derives from the plain language of the statute. It is supported by legislative history and by find-

---

[12] *Zeran,* 129 F.3d at 331.

[13] In the only § 230 immunity decision we find involving a website operator, eBay's status as an interactive computer service provider was not disputed. *See Stoner v. eBay, Inc.,* 2000 WL 1705637, at *1 (Cal. Super. Nov. 1, 2000) (unpublished).

[14] 47 U.S.C. § 230(f)(2).

ings and policy statements in the statute:

### (a) Findings

The Congress finds the following:

(1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

(2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

(3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

(4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.

(5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

### (b) Policy.

It is the policy of the United States—

(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;

(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

(5) to ensure vigorous enforcement of Federal criminal laws

todeter and punish trafficking in obscenity, stalking, and harassment by means of computer.[15]

▪ Congress passed § 230 "to remove the disincentives to selfregulation" created by a New York state court decision holding an ISP strictly liable for unidentified third parties' defamatory comments posted on its bulletin board.[16] As the Tenth Circuit explained in *Zeran*, Congress deliberately chose not to deter harmful online speech by means of civil liability on "companies that serve as intermediaries for other parties' potentially injurious messages."[17] Congress intended to encourage self-regulation,[18] and immunity is the form of that encouragement. We can discern no difference between website operators and ISPs in the degree to which immunity will encourage editorial decisions that will reduce the volume of offensive material on the Internet.

Under the plain language of the statute, Amazon is a provider of interactive computer services for purposes of § 230(f)(2).

## 2. Schneider's Claims Treat Amazon as a Publisher

▪ The next question is whether Schneider's complaint treats Amazon as a publisher. Section 230 "precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."[19] Publication includes "the failure to remove [content] . . . when first communicated by another party."[20] In his amended complaint, Schneider alleged that "Amazon.com exercises editorial discretion and decision-

---

[15] 47 U.S.C. § 230(a)-(b).

[16] *Zeran*, 129 F.3d at 331 (discussing *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, No.31063/94, 1995 N.Y. Misc. LEXIS 229, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)).

[17] *Zeran*, 129 F.3d at 330-31.

[18] *Zeran*, 129 F.3d at 331.

[19] *Zeran*, 129 F.3d at 330.

[20] *Zeran*, 129 F.3d at 332.

making authority over the posting of comments at its site."[21] Schneider's complaint thus treats Amazon as a publisher.

■ Schneider argues, however, that the statute bars only tort claims, and that his claims sound in contract, not tort. Schneider asserts he "does not seek to hold Amazon liable for initially posting the defamatory comments and reviews submitted by third parties—he seeks to recover the damages which flowed from Amazon's misrepresentations and breach [of] its agreement following the postings,"[22] because Amazon promised to remove the offensive posting, failed to do so, and reposted the reviews rather than deleting them.

We reject this analysis. First, assuming Schneider could prove existence of an enforceable promise to remove the comments, Schneider's claim is based entirely on the purported breach—failure to remove the posting—which is an exercise of editorial discretion. This is the activity the statute seeks to protect. More important, however, is the fact that § 230 does not limit its grant of immunity to tort claims: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."[23] Were the statute not clear enough, legislative history demonstrates Congress intended to extend immunity to all civil claims: "This section provides 'Good Samaritan' protections from *civil liability* for providers or users of an interactive computer service for actions to restrict or to enable restriction of access to objectionable online material."[24] Schneider's argument rests mainly upon his reading of the Fourth Circuit's opinion in *Zeran*, but that court did not discuss application of the statute to contract claims, and cannot be fairly read as implying, much less holding, that § 230 immunity is limited to tort claims. Finally, courts that have considered

[21] Clerk's Papers at 29.

[22] Appellant's Br. at 17-18.

[23] 47 U.S.C. § 230(e)(3).

[24] 142 Cong. Rec. H1078-03, 1103 (1996).

the question have held § 230 provides immunity to civil claims generally.[25]

Schneider's amended complaint treats Amazon as a publisher within the scope of § 230.

### 3. Amazon Is Not the Information Content Provider

Immunity extends only when the content is not provided by the service entity: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[26] An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."[27]

█ Schneider does not claim Amazon created the information about him. Rather, he argues that because Amazon had the right to edit the posting, and because Amazon claims licensing rights in the posted material,[28] Amazon in effect became the content provider.

---

[25] *See Kathleen R. v. City of Livermore*, 87 Cal. App. 4th 684, 104 Cal. Rptr. 2d 772, 780-81 (2001) (rejecting argument that § 230 immunity was limited to tort claims, holding immunity extends to a taxpayer's action for declaratory and injunctive relief); *see also Jane Doe One v. Oliver*, 46 Conn. Supp. 406, 755 A.2d 1000, 1003-04 (2000) (§ 230 immunity grounds for dismissal of breach of contract claim against AOL).

[26] 47 U.S.C. § 230(c)(1).

[27] 47 U.S.C. § 230(f)(3). In an unpublished decision, one court refused to characterize website hosts (entities that provide space on their servers to third parties for building websites) as "information content providers." *See Does v. Franco Prods.*, June 22, 2000 U.S. Dist. LEXIS 8645, *11, 2000 WL 816779, at *4-5 (N.D. Ill. June 22, 2000).

[28] Amazon advises potential book reviewers:

Amazon.com enables visitors to its site to post reviews of and comments on products featured on the site. *If you post reviews or comments on the site, you grant Amazon.com and its affiliates a non-exclusive, royalty-free, perpetual, irrevocable, and fully sublicensable right to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, and display such reviews and comments throughout the world in any media.* You also grant Amazon.com and its affiliates and the sublicensees the right to use the name that you submit with any review or comment, if any, in connection with such review or comment.

Clerk's Papers at 59-60.

Both of Schneider's arguments have been rejected. In *Ben Ezra, Weinstein, & Co. v. America Online, Inc.*,[29] the Tenth Circuit considered whether AOL's editing of content rendered it an information content provider. AOL provided access to allegedly inaccurate information regarding Ben Ezra's publicly-traded stock. The information came from an independent stock quote provider and a software provider. AOL deleted and altered some of the information, and Ben Ezra alleged that AOL worked so closely with the independent parties in creating and developing the information that AOL was an information content provider. The Tenth Circuit disagreed: "By deleting the allegedly inaccurate stock quotation information, Defendant was simply engaging in the editorial functions Congress sought to protect."[30]

We agree with the circuit court's analysis. And if actual editing does not create liability, the mere right to edit can hardly do so; Schneider does not allege Amazon actually altered or edited the comments.

Schneider's licensing rights argument was rejected in *Blumenthal v. Drudge*.[31] Blumenthal sued Drudge and AOL for allegedly defamatory statements made by Drudge in an electronic publication available to AOL subscribers under a licensing agreement. The licensing agreement provided that Drudge would "create, edit, update, and 'otherwise manage' the content of the [publication]," and AOL could "remove content that AOL reasonably determine[s] to violate AOL's then standard terms of service."[32] Drudge e-mailed each new edition to AOL, who then made it available to AOL subscribers. The *Blumenthal* court held the statute mandates immunity:

> Congress has made a different policy choice by providing immunity even where the interactive service provider has an active, even aggressive role in making available content pre-

---

[29] 206 F.3d 980 (10th Cir.), *cert. denied*, 531 U.S. 824 (2000).

[30] *Ben Ezra*, 206 F.3d at 986.

[31] 992 F. Supp. 44 (D.D.C. 1998).

[32] *Blumenthal v. Drudge*, 992 F. Supp. 44, 47 (quoting AOL Mem. at 7).

pared by others. In some sort of *quid pro quo* arrangement with the service provider community, Congress has conferred immunity from tort liability as an incentive to Internet service providers to self-police the Internet for obscenity and other offensive material, even where the self-policing is unsuccessful or not even attempted.[33]

We agree with the *Blumenthal* court as to the scope of the protection granted by § 230. Schneider attempts to distinguish *Blumenthal*, arguing Amazon's licensing rights are "significantly broader and deeper than AOL's" licensing rights.[34] But this is irrelevant. There is no allegation that Amazon was responsible for creating or developing the negative comments. Amazon was not a content provider under the allegations in Schneider's complaint.

Because all three elements for § 230 immunity are satisfied, the trial court properly concluded § 230 bars Schneider's claims against Amazon.[35]

Affirmed.

BECKER, A.C.J., and KENNEDY, J., concurs.

---

[33] *Blumenthal*, 992 F. Supp. at 52.

[34] Appellant's Br. at 20.

[35] Schneider claims the trial court erred in failing to permit reconsideration and the filing of a third amended complaint, for purposes of pleading foreign law. Schneider cited no authority and devoted no argument to this issue in his brief, merely asserting that "Amazon is not shielded by the Consumer Decency Act in Canada . . . [or] the United Kingdom." Appellant's Br. at 22. We therefore decline to consider this issue. *See* RAP 10.3(a)(5); *Mannington Carpets, Inc. v. Hazelrigg*, 94 Wn. App. 899, 910, 973 P.2d 1103 (1999) (refusing to review denial of motion for reconsideration where appellant failed to present authority or argument in support of claim). We also reject Schneider's reply brief, which was due Nov. 26, 2000 but was filed April 17, 2001, three days before oral argument. *See* RAP 10.2(d).