**NEMET CHEVROLET, LTD., et al, Plaintiffs,**

v.

**CONSUMERAFFAIRS.COM, INC., Defendant.**

**No. 1:08cv254 (GBL).**

United States District Court, E.D. Virginia, Alexandria Division.

June 18, 2008.

546

Benjamin G. Chew (Andrew M. Friedman, on brief), Patton Boggs LLP, Washington, DC, for Plaintiffs.

Jonathan David Frieden (Sean P. Roche, on brief), Odin Feldman & Pittleman PC, Fairfax, VA, for Defendant.

## MEMORANDUM ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant *Consumeraffairs.com* Inc.'s Motion to Dismiss or Strike Complaint. This case concerns negative reviews posted by consumers on Defendant's website concerning Plaintiffs, Nemet Chevrolet, Ltd. and Thomas Nemet D/B/A Nemet Motors. Plaintiffs take issue with the veracity of the information posted on Defendant's website, and seek to hold Defendant liable for defamation, tortious interference with a business expectancy and multiple violations of the Lanham Act. There are five issues before the Court. The first issue is whether immunity under the Communications Decency Act may be considered by the Court on a 12(b)(6) motion, and if so, whether Defendant is immune under the CDA Plaintiffs claims for defamation and tortious interference with contract. The second issue is whether Plaintiffs' request for punitive damages on Counts I and II in excess of the applicable statutory cap bars these claims. The third issue is whether Plaintiffs have standing to bring their claims under the Lanham Act. The fourth issue is whether Plaintiffs have pled that Defendant has used an imitation of Plaintiffs' mark that is likely to cause confusion among consumers, as required to state a claim of unfair competition under § 43(a)(1)(A) of the Lanham Act. The fifth issue is whether Plaintiffs have properly stated a false advertising claim against Defendant under § 43(a)(1)(B) of the Lanham Act. The Court holds that it may consider immunity under the CDA on a 12(b)(6) motion because the facts necessary for such a determination are apparent from the face of the Complaint, and because the CDA prevents Plaintiffs from establishing a set of facts that would entitle them to relief. Furthermore, the Court holds that Defendant is entitled to immunity under the CDA because it is a provide of an interactive computer service, the postings at issue in the Complaint were provided by a separate information content provider, and Plaintiffs' claims seek to treat Defendant as a publisher of the third party content at issue. With respect to the second issue, the Court finds that while it could strike the ad

damnum portion of the claims at issue, that ad damnum serves no practical purpose in a contested case such as this, and it is unnecessary to address the issue further because the Court will strike the claims at issue on other grounds. The Court also finds that under any approach used by the various circuits, that Plaintiffs do not have standing to bring their claims under the Lanham Act because Plaintiffs are not competitors of Defendant, and Plaintiffs have not alleged the sort of injury that the Lanham Act sought to protect against. Alternatively, if the Court were to find that Plaintiffs had standing to bring their claims under the Lanham Act, the Court grants the Defendant's Motion to Dismiss the counts brought under sections 43(a)(1)(A) and (B) of the Act because the two parties' goods are unrelated as a matter of law and because the parties are not in commercial competition and it could not possibly be alleged that the statements at issue were made for the purpose of influencing consumers to buy Defendant's goods or services instead of Plaintiffs'.

## I. BACKGROUND

Defendant consumeraffairs.com operates a website through which third-party consumers post reviews of retail buying experiences with merchants and exchange information about their experiences buying products or services from particular companies. Nemet Chevrolet is a group of franchised automotive dealers who sell cars in the New York area. Several consumer reviews posted on Defendant's website complain about individual experiences at Nemet Chevrolet. Plaintiffs' Complaint includes the text of six consumer postings, and Plaintiffs identify the poster responsible for the information contained in all but one of the postings. Plaintiffs attempt to rebut the complaints lodged in each posting in the text of their Complaint. The following counts are alleged in the Com-

plaint: I) defamation; II) tortious interference with a business expectancy; III) violation of § 43(a)(1)(A) of the Lanham Act; and IV) violation of § 43(a)(1)(B) of the Lanham Act. Plaintiffs claim that Defendant's publication of the statements on its website "discredited Plaintiff's honesty, credit and business reputation." (Compl.¶ 39). With respect to the claim for tortious interference, Plaintiff alleges that "Defendant's false and misleading articles caused potential Nemet customers not to contract with Plaintiffs, resulting in monetary damages to Plaintiff." (Compl.¶ 45). Plaintiffs assert that Defendant has violated § 43(a)(1)(A) of the Lanham Act by operating "in commerce under the guise of 'consumer affairs' for the purpose of unlawfully diverting customers and deriving a profit from misdirecting said customers" and consumers are likely to incorrectly believe that Defendant is affiliated with a state, federal or other organization. (Compl.¶ 47, 48). With respect to the alleged violation of § 43(a)(1)(B) of the Lanham Act, Plaintiffs state that Defendant's use of the name "consumer affairs" misrepresents the nature and/or quality of its services and that this misrepresentation is likely to "influence the purchasing decision and deceive customers." (Compl.¶ 52, 53).

## II. DISCUSSION

### A. Standard of Review

In a recent decision, the Supreme Court held that a Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007); *see* Fed.R.Civ.P. 12(b)(6). In considering a Rule 12(b)(6)

motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when ruling on a Rule 12(b)(6) motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* — U.S. —, —, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted. *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir.1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## B. Analysis

■■■ The Court grants Defendant's Motion to Dismiss Counts I (defamation) and II (tortious interference with business expectancy) because it is apparent from the facts contained in the Complaint that Defendant is entitled to immunity under the Communications Decency Act.

> By its plain language § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions *such as deciding whether to publish, withdraw, postpone or alter content*-are barred.

*Zeran v. America Online, Inc.* 129 F.3d 327, 330 (4th Cir.1997)(emphasis added). Courts engage in a three part inquiry when determining the attachment of immunity under the CDA. The Court must determine: 1) whether Defendant is a provider of an interactive computer service; 2) if the postings at issue are information provided by another information content provider; and 3) whether Plaintiffs claims seek to treat Defendant as a publisher or speaker of third party content. *Schneider v. Amazon.com*, 108 Wash.App. 454, 31 P.3d 37, 40 (2001). The CDA defines an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). By contrast, an information content provider is defined as, "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

The crucial inquiry for determining immunity is the role of the Defendant as it pertains to the statements at issue in the Complaint. The parties do not disagree that Defendant runs a website. Defendants are indisputably an interactive computer service. The question is whether Defendant assisted in the creation and development of the content at issue so as to render it also an information content provider for these purposes. The Complaint consists largely of isolated statements made by various consumers posted on Defendant's website. Plaintiffs are not only

able to provide the first and last names of the customers who authored the postings on Defendant's website, but Plaintiffs also provide their own account of the events that transpired when these people were customers at Nemet Motors. As far as alleging in the Complaint that Defendant played a role in the development or creation of the content at issue, the closest Plaintiffs come is the generic statement that follows each instance of conduct, wherein Plaintiffs state that, "upon information and belief, Defendant participated in the preparation and publication of a false, defamatory, malicious, and libelous article of and concerning Plaintiffs...." Such bald allegations of Defendant's participation are insufficient to meet the Rule 8(a) requirements. Plaintiff has failed to sufficiently or substantively allege that Defendant participated in the creation or development of the website content at issue in this claim.

On a Rule 12(b)(6) motion, the Court's analysis is limited to the four corners of the Complaint. Plaintiffs essentially seek to amend their Complaint through the attachment of declarations to their Opposition and the inclusion of new allegations and arguments in their responsive pleading. Plaintiffs allege for the first time in their Opposition that Defendant was responsible for the creation of original content that defamed Plaintiffs. (Pl.Opp.3). Plaintiffs also advance for the first time, arguments in their Opposition regarding the inclusion of titles, headings and categories by Defendants on the website, as grounds for Defendant to be found ineligible for immunity and attempt to draw a parallel between the facts in this case and *MCW Inc. v. Badbusinssbureau.com.* 3:02cv2727G, 2004 WL 833595 (N.D.Tex. Apr. 19, 2004).

Factually, *MCW* is very similar to this case. There, the plaintiff was a corporation engaged in the business of helping individuals seeking individual job and career counseling. Defendant operated an internet-based consumer complaint forum. In addition to posting consumer complaints, Defendants used the site to "solicit donations, sell advertising space, assist and encourage the formation of class action law suits, charge promotional fees on amounts collected by consumers, and advertise and sell 'rip-off revenge' packs that encourage consumers to avenge themselves on companies." *Id.* at *1. The complaint in *MCW* alleged that the defendants "reproduce[d] and/or us[ed] the Bernard Haldane marks and confusingly similar variations thereof-without any consent or authorization-in connection with the publishing and posting of false, misleading and disparaging statements about MCW and its goods or services on the defendants web sites." *Id.* at * 2. Defendant asserted five causes of action: 1) unfair competition under the Lanham Act; 2) false advertising under the Lanham Act; 3) unfair competition under Texas common law; 4) business disparagement under Texas common law; and 5) trademark infringement under Texas common law. *Id.* In *MCW,* the Court found that immunity did not exist because "MCWs claims are clearly based on the disparaging titles, headings, and editorial messages that MCW alleges the defendants created." *Id.* at *10.

Plaintiffs point to *MCW* in their Opposition in support of their argument that Defendant's creation of titles and headings and solicitation of comments and dissemination of information to attorneys serves to strip Defendant of any asserted immunity. *MCW* is easily distinguished on this issue in several ways. Nowhere in the Complaint in this matter have Plaintiffs made any claims pertaining to the creation of titles and headings by Defendant, let alone any injury suffered by Plaintiffs as a result of such headings. The Court in

*MCW* also found the defendants to be information content providers, however the active conduct alleged pertaining to the defendants in that matter are far more severe and sufficiently distinct from the conduct alleged in the Complaint here. In *MCW*, the defendants were encouraging posters to take pictures to add to the website, and were actively soliciting postings. There have been no allegations as to any such active solicitation of information by Defendants in this matter.

Plaintiffs also argue that it is improper for the Court to consider this matter on a 12(b)(6) motion, arguing that the issue of immunity requires further factual development and goes to the merits of the claims. Plaintiffs' pleadings selectively rely on the holdings of *MCW*, electing to ignore the statement by the court in that case that, "[t]he CDA, if applicable, is an appropriate ground for dismissal of the complaint under Rule 12(b)(6) because the Act would preclude MCW from establishing a set of facts that would entitle it to relief." *Id.* at *7. Additionally the Fourth Circuit has held that "[a] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense.... But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair Inc.*, 494 F.3d 458, 465 (4th Cir.2007). In this instance the elements necessary to make a finding regarding immunity are apparent from the face of the Complaint. It is clear from the allegations that Defendant provides an interactive computer service. The Complaint identifies the third-party information content providers. It contains little more than bald allegations going to Defendant's participation in the creation and development of these posts. The

Complaint focuses largely on Defendant's publication of these comments by third-parties, therefore it is reasonable for the Court to conclude that Plaintiffs seek to hold Defendants responsible either as publishers or as speakers of third party content. For these reasons, based on the allegations contained in Plaintiffs' Complaint, it is appropriate for the Court to rule on Defendant's assertion of immunity at this stage in the litigation.

The Court also finds Plaintiff's attempts to draw parallels between this matter and *Energy Automation Systems Inc. v. Xcentric Ventures LLC* unpersuasive and misguided. 306–1079 2007 WL 1557202 (M.D.Tenn. May 25, 2007). First, it is worth noting that in *Energy Automation* the issue before the court was a challenge to personal jurisdiction under Rule 12(b)(2) not a 12(b)(6) motion. Plaintiffs present the following quote in support of their position: "the CDA has created a broad defense to liability. Whether or not that defense applies in any particular case is a question that goes to the merits of that case...." *Id.* at *13. Plaintiff omits the remainder of that sentence which states, "and not to the question of *jurisdiction.*" *Id.* (emphasis added). The court went on to state that,

> Generally when a court faces questions going to the merits of a case in a Rule 12(b)(2) motion, that motion may be converted to a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. In the present case, the defendants' arguments on the merits rely on affidavits and other documents; the defendants do not argue that the Amended Complaint is deficient on its face. Therefore, in order for the court to consider the defendants' arguments on the merit s, the defendants' motion must be analyzed as a Motion for Summary Judgment.

*Id.* at *14. The court implicitly acknowledged that a court *could* properly address this issue on a 12(b)(6) motion, and that it was precluded from doing so in that case 1) because it was before the Court on a 12(b)(2) motion; and 2) it could not convert the pleading into a 12(b)(6) motion because of the inclusion of additional extrinsic evidence by the parties.

The Court therefore holds that it is proper to evaluate Defendant's immunity defense in the context of a 12(b)(6) motion because the necessary facts are apparent on the face of the Complaint, and that the immunity available under the CDA precludes Plaintiff from stating a claim of defamation or tortious interference with business expectancy in this instance.

The Court declines to address Defendant's request to strike Counts I and II based on a request for punitive damages over the statutory cap because the issue is moot in light of the Court's ruling on CDA immunity, and the issue is largely irrelevant at this stage in the litigation. Virginia trial courts are split on the issue of whether a request for damages in excess of the statutory cap preclude the associated action or merely require the court to reduce any award in excess of the cap. *See Paul v. Gomez* 190 F.R.D. 402, 403, n. 8 (W.D.Va.2000)("Trial courts in Virginia have split on this issue." *Compare City of Winchester Dupont v. Winchester Med. Ctr. Inc.,* No. 92–171, 1993 WL 946308, at *4 (Va.Cir.Ct. Nov. 8, 1993)(motion to reduce ad damnum granted), *with Bennett v. Riverside Reg'l Med. Ctr.,* No. 23629–RF, 1997 WL 1070546, at *1 (Va.Cir.Ct. Mar. 17, 1997)(motion to reduce denied). The court in Paul went on to note that "[u]nder federal procedure, an ad damnum serves no practical purpose in a contested case, since the court must award the full relief to which the plaintiff is entitled, regardless

of the state of the pleadings." *Id.* at 403. Therefore, because these claims have already been stricken on other grounds, and because it would essentially have no impact on how this matter proceeds, the Court declines to rule on this issue, or in the alternative, the Court declines to strike this issue because it is better handled post-trial if in fact this matter were to reach that stage.

 The Court finds that Plaintiffs lack standing to bring Counts III (unfair competition) and IV (false advertising) because regardless of which approach the Court takes to the issue of standing, the fact that the parties are not competitors and that this claim is not within the type of injury that the Lanham Act seeks to prevent, precludes Plaintiffs from bringing their claims based on Defendant's use of the term "consumer affairs" under the Lanham Act. "Standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirements ... and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). As Article III standing is uncontested by the parties, the Court's examination centers on the prudential standing analysis. There is a split among the Circuits as to the proper approach to utilize when determining prudential standing in the context of the Lanham Act.[1]

The Third, Fifth and Eleventh Circuits have adopted a five factor test for determining prudential standing to bring claims under the Lanham Act. In conducting this inquiry the Court must assess the following five issues: 1) whether the injury alleged is of a type that Congress sought to

---

**1.** The Fourth Circuit has not presently adopted any of these approaches.

redress in the Lanham Act; 2) how directly the defendant's conduct affected the plaintiff; 3) the proximity of the Plaintiff to the allegedly harmful conduct—more specifically if there is an identifiable class of people with a self-interest in vindicating the public interest who are better suited to bring this claim; 4) how speculative damages would be; and 5) the risk of duplicative damages or the complexity of apportioning damages. *Conte Bros. Auto. Inc. v. Quaker State–Slick 50 Inc.*, 165 F.3d 221, 223 (3d Cir.1998). The court applied the five factor test in *MCW*, which as discussed previously, is factually very similar to this case, and therefore very instructive on this point. The court found that the plaintiffs in *MCW* lacked standing, focusing in large part on the plaintiffs' shortcomings on the first two of the five factors. The analysis on those two factors is directly on point with the issues in this case. The court in *MCW* found that injury to goodwill was not the type of injury that the Lanham Act sought to redress, and that it was not enough for plaintiff to allege an injury owing to defendant's false advertising—it was necessary that it be harmed by a *"competitor's* false advertising touting the virtues of a *competing product or service."* *MCW,* 2004 WL 833595 at *13(emphasis added). On the second factor, the court in *MCW* held that under the five factor test, standing only existed where "a *competitor* is directly injuring another by making false statements about his own goods and thus *inducing customers to switch from a competitor."* *Id.* (emphasis added). These two points of analysis are exactly on point with the allegations and shortcomings in this matter. One distinction between *MCW* and this case, is that in *MCW,* the plaintiff had provided evidence of concrete commercial losses stemming from the defendant's deceptive and disparaging postings—something that is missing here. Therefore,

looking to the case of *MCW* for guidance, this Court concludes that if this test were applied to these facts, it would be appropriate and necessary to find that Nemet Motors lacks standing to bring its Lanham Act claims.

Looking briefly to the tests for prudential standing on Lanham Act claims applied by other circuits, the Court finds that Plaintiffs lack standing under any criteria that the Fourth Circuit is likely to employ. The Seventh, Ninth and Tenth Circuits utilize what is known as the categorical test, wherein the plaintiffs must show that they have suffered a commercial injury based upon a misrepresentation and the injury harms the plaintiffs' ability to compete with the defendant. *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.* 407 F.3d 1027, 1037 (9th Cir. 2005); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.,* 188 F.3d 427, 438 (7th Cir. 1999); *Stanfield v. Osborne Indus. Inc.* 52 F.3d 867, 873 (10th Cir.1995). Minimal analysis is required under this approach because it is clear and indisputable that the parties are not competitors as required by this approach to prudential standing.

Finally, the First and Second Circuits have adopted the reasonable interest test, wherein the plaintiff must have a reasonable interest to be protected *against the type of harm that the Lanham Act is intended to prevent.* *Ortho Pharm. Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir.1994); *Camel Hair & Cashmere Inst. Inc. v. Associated Dry Goods Corp.,* 799 F.2d 6, 11 (1st Cir.1986). The Supreme Court has held that the purpose of the Lanham Act is to provide "national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 198, 105

S.Ct. 658, 83 L.Ed.2d 582 (1985). Undoubtedly this case fails to meet the standing requirement under this test as well, both because Plaintiffs have not alleged any threat to their *own trademark*, and this case has nothing to do with *competing products* and the ability of consumers to distinguish between them. Thus, Plaintiffs would fail to satisfy the standing requirement under this analysis as well.

Plaintiffs have cited to *Made in the USA Foundation v. Phillips Foods* as being the controlling case in the Fourth Circuit on this matter and as standing for the proposition that "[i]n the Fourth Circuit, the touchstone of the analysis of Lanham Act standing is whether the claimant is trying to protect purely commercial interests against unscrupulous commercial conduct." (Pl.Opp.16)(referencing 365 F.3d 278 (4th Cir.2004)). Plaintiffs go on to mischaracterize the Fourth Circuit's analysis of *Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corporation* in *Made in the USA,* arguing that "the Court also relied on a First Circuit case holding that a Plaintiff must have a reasonable interest in being protected from false advertising to have standing and must therefore 'show a link or 'nexus' between itself and the alleged falsehood.'" (Pl.Opp.16)(discussing 799 F.2d 6 (1st Cir.1986)). First and foremost it is worth noting that *Made in the USA,* was limited exclusively to a determination of whether *consumers* had standing to sue under the Lanham Act. The Court spent very little time discussing what would satisfy the standing requirement for a commercial entity, however in a passage that Plaintiff neglected to discuss, the Court did state that "in an earlier case involving commercial parties, we noted in passing that the Lanham Act is 'a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competi-

tor's false advertising.'" *Made in the USA,* 365 F.3d at 281 (quoting *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1139 (4th Cir.1993)). This statement allows us to draw the inference that on the limited opportunities that this issue has been before the Fourth Circuit, it expressed at least some belief that claims under the Lanham Act must be brought by a Plaintiff against its *competitor.* This is a departure from Plaintiff's reading of this case. Additionally, the Court in *Made in the USA* in no way relied on the opinion in *Camel Hair,* as much as it made a passing reference to that court's holding that a trade group had standing to bring a claim under the Lanham Act, and acknowledged that court's ruling that *direct* competition was not required for standing under the Act, just a nexus between the plaintiff and the falsehood. It is worth noting however that the parties in Camel *Hair* were both engaged in the use of cashmere in the garment industry, presenting a much closer nexus than what is involved here. Most importantly however, the Fourth Circuit in *Made in the USA* in no way *adopted* the holding of *Camel Hair.*

Ultimately, the Court finds that regardless of which existing standard for prudential standing were to be applied to this Lanham Act claim, the Court would be forced to find that Plaintiffs lack standing because they are not in competition with Defendant and their alleged injury is not of the sort that the Lanham Act sought to prevent.

■ Alternatively, the Court finds that even were it to concede that Plaintiffs had standing to bring their claims, that they would still be dismissed on this 12(b)(6) motion for failure to state a claim on the unfair competition claim because the parties are unrelated as a matter of law, and on the false advertising claim because the

representations at issue do not constitute commercial advertising as required to state a claim for false advertising under the Lanham Act. In the Fourth Circuit, in analyzing a claim for unfair competition under the Lanham Act the court must look at: 1) type of mark allegedly infringed; 2) similarity between the two marks; 3) similarity of the products or services; 4) identity of the retail outlets and purchasers; 5) identity of the advertising media used; 6) defendant's intent; and 7) evidence of actual confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va. Inc.*, 43 F.3d 922, 930 (4th Cir.1995). Beyond the initial observations that this claim must fail because there is no allegation of infringement of a trademark, there are no similar trademarks at issue, the parties do not provide similar products or services, and there has been no evidence of actual confusion, and therefore this matter can be easily disposed of on a 12(b)(6) motion. Once again returning to the court's analysis in *MCW*, there the court held in it's evaluation of plaintiff's unfair competition claim that although claims involving likelihood of confusion are typically regarded as a question of fact protecting it from resolution on a 12(b)(6) motion, there is an exception in that "where the goods between two parties are unrelated as a matter of law, dismissal of a likelihood of confusion claim pursuant to a Rule 12(b)(6) motion is appropriate." *MCW*, 2004 WL 833595 at *15. The court went on to say that "the present case presents an unusual unfair competition claim. Not only are the goods unrelated as a matter of law, but neither party is a direct competitor of the other." *Id.* Similarly, this clam is ripe for resolution on a 12(b)(6) motion, because even if the Court were to find that Plaintiff had standing to *bring* the claim, it must be dismissed for failure to state a claim based on the dissimilarities between the parties and the industries that they are engaged in.

Finally the Court finds that even if Plaintiffs were found to have standing to bring their false advertising claim under the Lanham Act, that this claim must be dismissed for failure to state a claim because it has not been, and cannot be, alleged that the representations at issue constitute commercial advertising as required to state a claim of false advertising. The elements of a claim of false advertising under the Lanham Act are: 1) defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; 2) the misrepresentation is material, in that it is likely to influence the purchasing decision; 3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; 4) the defendant placed the false or misleading statement in interstate commerce; and 5) plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir.2002). A representation constitutes a commercial advertising or promotion under § 43(a)(1)(B) of the Lanham Act if it is: 1) commercial speech; 2) by a defendant who is in commercial competition with plaintiff; 3) for the purpose of influencing consumers to buy defendant's good or service; and 4) representation must be disseminated sufficiently to the relevant purchasing public to constitute advertising promotion within that industry. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F.Supp.2d 565, 573 (E.D.Va.2004). As discussed at several other junctures, Defendant is not in commercial competition with Plaintiffs. This would in turn prevent a finding that the representations at issue constitute commercial advertising. Subsequently,

Plaintiffs are prevented from satisfying the first element required to state a claim for false advertising under the Lanham Act. Therefore, even if Plaintiffs have standing to bring a false advertising claim under the Lanham Act, it is appropriately disposed of on 12(b)(6) motion, because the relevant representation does not constitute commercial advertising.

## III. CONCLUSION

This Court holds that Defendant Consumeraffairs.com is immune from Plaintiffs Nemet Chevrolet and Nemet Motors' claims for defamation and tortious interference under the Communications Decency Act because the statements at issue were provided by a separate information content provider and Defendant was merely a interactive computer service as it pertains to these statements. Furthermore, the Court holds that Plaintiffs lack standing to bring their claims under the Lanham Act, and that alternatively, they have failed to state a claim under the Act because the parties are unrelated as a matter of law and because the parties are not in commercial competition.

For the foregoing reasons, it is hereby

ORDERED that Defendant Consumeraffairs.com's Motion to Dismiss or Strike Complaint is GRANTED. This case is dismissed.

The Clerk is directed to forward a copy of this Order to counsel.