OPINION OF THE COURT
James E. d’Auguste, J.
Defendants Cars.com[1] and Classified Ventures, LLC (collectively, Cars), seek dismissal of plaintiff Benjamin Okeke’s complaint on the grounds that (1) the lawsuit violates a terms of service agreement (TOS), including a forum selection provision, or, in the alternative, (2) the complaint is barred based upon the application of the Communications Decency Act of *584 1996 (47 USC § 230 et seq.) (CDA) or (3) otherwise fails to state a cause of action for negligence.
Statement of Facts
On December 12, 2011, Okeke viewed an advertisement listing a 2012 Toyota Sequoia for sale on Cars’ website, www.cars.com. The automobile’s advertised purchase price was $13,287. The advertisement indicated that the car was being sold by an “[findividual seller” named “Alan,” who was located in Phoenix, Arizona. No contact information was provided other than the seller’s phone number.
Using an interactive feature on Cars’ web page, Okeke submitted his name, zip code, and phone number. He received an email from Cars indicating that the information Okeke submitted through the site was being sent to the seller. Thereafter, Okeke exchanged emails with the seller, which culminated in a requested wire transfer of funds to a Goldman Sachs account held in Barclays Bank in London, England. Okeke was informed that once he wired the purchase price of the vehicle, the seller would ship the car to Okeke; Okeke would have five days to inspect the vehicle, and Barclays would keep the funds in escrow until Okeke completed his inspection. The seller also told Okeke that he could ship the vehicle back if, after inspection, the vehicle was not as the seller described.
On December 13, 2011, Okeke wired funds representing the purchase price to the seller from a local branch of defendant Capital One, N.A.[2] Okeke wired the funds without taking any precautions, such as confirming the seller’s identity, running a title report on the vehicle, conferring with Barclays that it would hold the funds in escrow for the represented time period, or asking the seller why he was required to wire the funds outside the United States when the seller was putatively located in Arizona. The seller confirmed Okeke’s payment and advised him that he would start the delivery process the next day. Despite the seller’s promise to update Okeke within a few hours, Okeke never heard from the seller again.
On December 14, 2011, Okeke attempted to cancel his wire transfer with Capital One. He also sent Cars two emails to notify it of the fraudulent transaction. Cars responded with boilerplate emails thanking him for contacting the company.
On December 15, 2011, Okeke called Cars’ customer service twice, and one of its representatives advised him that listing *585 would be removed. Later that day, Cars sent Okeke an email indicating that it located and removed the fraudulent advertisement using the information Okeke provided. The email also noted that the advertisement “was previously determined not to be a legitimate listing and removed as fraudulent.”
On May 14, 2012, Okeke commenced the instant action against Cars and Capital One. He asserts three theories of negligence against Cars, alleging that it: (1) failed to ensure the legitimacy of users’ listings or advertisements; (2) failed to post adequate and proper notices and/or warnings to users about responding to listings or advertisements on the website; and (3) failed to promptly remove a listing after receiving notification that the listing was fraudulent.[3]
Analysis
I. Cars Terms of Service Agreement
Cars initially argues that Okeke’s case should be dismissed because it violates the TOS’s provisions relating to forum selection, warranty disclaimer and limitations of liability. The TOS was located in a hyperlink at the bottom of the Cars website. It advises a user that “[b]y using the Site, you hereby agree that you are at least eighteen (18) years of age and bound by all of the following provisions of these Terms of Service.” Cars argues that by using the website, Okeke agreed to be bound by the agreement’s terms, which include a forum section clause providing that all litigation is required to be resolved in Cook County, Illinois. However, “in the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance.” (Hines v Overstock.com, Inc., 380 Fed Appx 22, 25 [2d Cir 2010].) Here, there is no evidence that Okeke possessed actual or constructive knowledge of the referenced terms. As such, the court finds that Cars fails to make a showing, at this stage of the proceedings, that Okeke is barred from pursuing his claims in the instant forum or the action must be dismissed pursuant to warranty or liability restrictions.
*586 II. Communications Decency Act of 1996
Cars also argues that Okeke’s claims are barred by the CDA (47 USC § 230 et seq.), which grants providers of interactive computer services certain immunities from civil litigation. (47 USC § 230 [c].) For instance, the CDA mandates that such providers cannot be deemed to be a “publisher” or “speaker” of third-party content, thereby having the practical effect of barring defamation claims, which are the most common type of tort claim associated with the CDA. (Barnes v Yahoo!, Inc., 570 F3d 1096, 1101 [9th Cir 2009] [“The cause of action most frequently associated with the cases on section 230 is defamation”], citing Carafano v Metrosplash.com. Inc., 339 F3d 1119 [9th Cir 2003]; Batzel v Smith, 333 F3d 1018 [9th Cir 2003].) Other tort claims, such as the common-law negligence claim presented here, are analyzed on a case-by-case basis, and courts have broadly construed the CDA’s provisions in favor of granting immunity. (See Gibson v Craigslist, Inc., 2009 WL 1704355, *3, 2009 US Dist LEXIS 53246, *7-11 [SD NY, June 15, 2009, No. 08 Civ. 7735(RMB)], quoting Atlantic Rec. Corp. v Project Playlist, Inc., 603 F Supp 2d 690, 699 [SD NY 2009].)
Courts engage in a three-part inquiry to determine CDA § 230 (c) (1) immunity: “1) whether Defendant is a provider of an interactive computer service; 2) if the postings at issue are information provided by another information content provider; and 3) whether Plaintiffs claims seek to treat Defendant as a publisher or speaker of third party content.” (Nemet Chevrolet, Ltd. v Consumeraffairs.com, Inc., 564 F Supp 2d 544, 548 [ED Va 2008]; see also Gibson, 2009 WL 1704355, *3, 2009 US Dist LEXIS 53246, *7-11.) This essentially requires an initial finding that the CDA is applicable to a defendant (first two prongs) and then an analysis of whether a defendant must be treated as a “publisher” or “speaker” (third prong) to sustain plaintiffs claim.
Cars readily meets the first prong of the analysis as it is a provider of an interactive computer service. An “interactive computer service” is defined in 47 USC § 230 (f) (2) as “any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.” The most common interactive computer service providers are websites. (See Ascentive, LLC v Opinion Corp., 842 F Supp 2d 450, 473 [ED NY 2011] [“Courts generally conclude that a website *587 falls within this definition” (citations omitted)]; Nemet Chevrolet, Ltd. v Consumeraffairs.com, Inc., 591 F3d 250, 255 [4th Cir 2009] [discussing the CDA’s application to website operators]; Fair Hous. Council of San Fernando Val. v Roommates.Com, LLC, 521 F3d 1157, 1162 n 6 [9th Cir 2008] [“Today, the most common interactive computer services are websites”]; Universal Communication Sys., Inc. v Lycos, Inc., 478 F3d 413, 419 [1st Cir 2007] [“A web site . . . ‘enables computer access by multiple users to a computer server,’ namely, the server that hosts the web site”].)
Cars also meets the second prong of the analysis as the posting at issue is that of another information content provider. “Information content provider” is defined in 47 USC § 230 (f) (3) as “any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.” Okeke’s complaint alleges that the fraudulent information was posted by an unknown third party, identified under the alias of Alan, and it does not allege that Cars posted the fraudulent information. (See Gibson, 2009 WL 1704355, *4, 2009 US Dist LEXIS 53246, *11-13 [holding the second element satisfied where plaintiffs complaint alleged that “an ‘unknown individual,’ not the Defendant,” placed an advertisement on defendant Craigslist.com’s site].)
Cars likewise meets the third prong of the analysis as Okeke is attempting to treat Cars as the publisher of fraudulent material. For instance, Okeke’s assertions that Cars failed to verify the legitimacy of advertisements and to promptly remove the fraudulent material once it was brought to its attention falls squarely within the CDA’s immunity provisions. This is because traditional editorial functions of a publisher include actions “such as deciding whether to publish, withdraw, postpone or alter content.” (Shiamili v Real Estate Group of N.Y., Inc., 17 NY3d 281, 289 [2011], quoting Zeran v America Online, Inc., 129 F3d 327, 330 [4th Cir 1997].) These actions are protected, and the privilege “extends to the provider’s ‘inherent decisions about how to treat postings generally.’ ” (Doe v Friendfinder Network, Inc., 540 F Supp 2d 288, 296 [D NH 2008], quoting Universal Communication Sys., Inc., 478 F3d at 422.) To hold otherwise would defeat congressional intent to encourage interactive computer service providers to undertake efforts to remove, block, edit, or restrict access to objectionable material. (See Zeran v America Online, Inc., 958 F Supp 1124, 1134-1136 *588 [ED Va 1997], affd 129 F3d at 333 [“Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA” as it would “reinforce( ) service providers’ incentives to restrict speech and abstain from self-regulation”; notice-based liability “would provide third parties with a no-cost means to create the basis for future lawsuits”].)
Moreover, the legal premise underlying Okeke’s argument that Cars should have employed greater safeguards to ward against fraudulent activity has been soundly rejected by the Court of Appeals as exceeding New York’s common-law negligence obligations. (Lunney v Prodigy Servs. Co., 94 NY2d 242, 251 [1999] [“The rule plaintiff advocates would, in cases such as this, open an (Internet service provider) to liability for the wrongful acts of countless potential tortfeasors committed against countless potential victims. There is no justification for such a limitless field of liability”].)
III. Promissory Estoppel
The court lastly addresses Okeke’s purported promissory estoppel claim, which was not asserted in the complaint and was raised for the first time in his opposition papers. Putting aside the defective nature of raising a new cause of action not asserted in any pleading, Okeke has not stated a claim for promissory estoppel. “The elements of a claim for promissory estoppel are: (1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance.” (MatlinPatterson ATA Holdings LLC v Federal Express Corp., 87 AD3d 836, 841-842 [1st Dept 2011].) Here, Okeke articulates no “promise” made by Cars to him, much less reasonable reliance on such a representation. Indeed, Okeke’s communications with Cars relating to the fraudulent transaction occurred after he had already wired the money to the seller thereby eliminating the possibility that any damages he suffered were the result of Cars’ statements to him. In the end, Okeke’s promissory estoppel claim is an impermissible attempt to use state common law to circumvent an express federal immunity mandate relating to an interactive computer service provider’s decision-making regarding publishing, withdrawing, postponing or altering content. (Shiamili, 17 NY3d at 289, quoting Zeran, 129 F3d at 330.)
IV Conclusion
Since Cars’ actions or inactions are cloaked with CDA immunity, its motion to dismiss is granted, as Okeke’s state common-law negligence claim is preempted by federal law. Ac *589 cordingly, the Clerk is directed to enter judgment dismissing the complaint against Cars.

. Although sued as a separate entity, Cars.com is a brand of Classified Ventures, LLC.

. Capital One takes no position on Cars’ motion.

. Okeke’s claim against Capital One, which is not relevant to the resolution of this motion, is that the bank should not have permitted him to wire the funds outside the country without having additional information relating to the recipient.